(No. 50286.—Writ awarded.)

THE PEOPLE *ex rel.* THE ILLINOIS JUDICIAL IN-QUIRY BOARD *et al.*, Petitioners, v. HARRY D. HARTEL, JR., Judge, *et al.*, Respondents.

*Opinion filed July 14, 1978.—Rehearing denied September 29, 1978.*

CLARK, J., concurring in the decision.
GOLDENHERSH, J., took no part.
WARD, C.J., and MORAN, J., specially concurring.

Milton I. Shadur, Michael L. Shakman, and James A. Carney, of Chicago (Devoe, Shadur & Krupp, of counsel), for petitioners.

Charles J. O'Laughlin, Michael J. Rovell, Kathleen J. Purcell, and Steven B. Berlin, of Chicago (Jenner & Block, of counsel), for respondent Charles A. Alfano.

MR. JUSTICE UNDERWOOD delivered the decision of the court and the following opinion in which MR. JUSTICE RYAN and MR. JUSTICE KLUCZYNSKI join:

Pursuant to our Rule 381 (58 Ill. 2d R. 381) we allowed the Judicial Inquiry Board leave to file an original petition for *mandamus* or prohibition. That petition seeks to compel Judge Harry D. Hartel, Jr., of the Lake County circuit court to vacate his order commanding the Board to produce the fruits of its investigation of the conduct of Judge Charles A. Alfano (defendant). The petition also seeks to prohibit any future attempts to compel disclosure of the Board's actions regarding Judge Alfano or the results thereof.

Charles Alfano is an associate judge of the circuit court of Cook County. On September 5, 1977, he was arrested by Officer Whitmore of the Lake County sheriff's department and charged with battery and obstructing a police officer from performing his duties, both misdemeanor offenses. Those charges are presently pending before the circuit court of Lake County in a case entitled People v. Charles Alfano. After his arrest, the Judicial Inquiry Board began an investigation to determine whether the incidents giving rise to that arrest constituted a basis for the filing of a complaint before the Courts Commission. That action was independent of any other investigation by the State's Attorney or police. In the course of that investigation, which is still pending, the Board has obtained certain statements and documents relevant to the incident. One person has testified before the Board while under oath. The Board has not disclosed any information to the State's Attorney, and its chairman states in an affidavit that the Board will not make any future disclosure to that office. In November defendant moved the trial court to order "that the files of the Judicial Inquiry Board be produced for defendant's inspection or, in the alternative, that they be produced for inspection by

this Court in camera and those portions thereof which contain material exculpatory to defendant be produced for defendant's inspection." He alleged as grounds for his motion that:

"1. The Judicial Inquiry Board has conducted an extensive investigation into this case. The investigator for the Judicial Inquiry Board has interrogated substantially all of the witnesses including several who have refused to submit to interrogation by this defendant.

2. The investigator for the Judicial Inquiry Board has from time to time revealed to witnesses friendly to defendant the substance of what other witnesses have stated. In certain instances statements exculpatory to defendant have been revealed. In other instances statements of what occurred which are at variance with prior statements of witnesses adverse to defendant have been revealed."

Simultaneously, a *subpoena duces tecum* was served on the Board's chairman ordering him to appear and produce the "investigative file in the matter of Charles A. Alfano, including reports of all witnesses interviewed."

Following a hearing on defendant's motion to produce the Board's file and the Board's motion to quash the *subpoena duces tecum,* an order was entered by Judge Hartel on December 14, 1977, denying the motion to quash and directing the Board to produce at the time of trial all substantially verbatim statements made by any person named on the State's list of witnesses in the criminal proceeding, to make available to defendant at the conclusion of any witnesses' direct trial testimony the statements of that witness, and, in addition, to produce within 14 days for the court's inspection all evidence obtained by the Board during its investigation, the court to deliver to respondent any evidence which "tends to negate the defendant's guilt or which is of an exculpatory nature." It is that order vacation of which is sought in this action.

The Judicial Inquiry Board was created by article VI, section 15(b), of the Illinois Constitution. It is an integral part of Illinois' system of judicial discipline. Under section 15(c) the Board is authorized to conduct investigations, to receive or to initiate complaints concerning a judge, and to file with the Courts Commission complaints in those cases in which the Board has determined that a reasonable basis exists to charge a judge with misconduct or disability. The Courts Commission, established by section 15(e), hears complaints filed by the Board and determines the discipline, if any, to be imposed. That discipline may include removal of the judge from office. Of particular importance here is the provision in section 15(c) that "[a]ll proceedings of the Board shall be confidential except the filing of a complaint with the Courts Commission." (Emphasis added.) Ill. Const. 1970, art. VI, sec. 15(c).

The Board urges that the confidentiality provision of section 15(c) precludes the disclosure ordered by the trial court; that such disclosure would unconstitutionally impede the Board's performance of its duties; that because the material required to be disclosed has not been disclosed to the prosecution and is unavailable to it, the due process principles relied upon by the trial judge are inapplicable; and that, assuming judicially compelled production would be appropriate in some circumstances, that production would require the showing of a compelling and particularized need which has not been demonstrated here.

In contrast to the Board's contention that its confidentiality is absolute, Judge Alfano contends the principle reason for the confidentiality provision of 15(c) was the protection of judges against unfavorable publicity resulting from irresponsible and unfounded charges or complaints, and that, since it is he who is requesting disclosure, the need for confidentiality is substantially diminished. It is clear that protection of judges from such charges and complaints was an important consideration in

the adoption of the confidentiality provision by the Constitutional Convention. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 867.) Other elements, including the encouragement and protection of witnesses, must also be evaluated however, and we cannot conclude, simply because the judge under investigation consents to disclosure, that the Board's files may automatically be opened to inspection. See *In re Mikesell* (1976), 396 Mich. 517, 534, 243 N.W.2d 86, 94; *McCartney v. Commission on Judicial Qualifications* (1974), 12 Cal. 3d 512, 520-21, 526 P.2d 268, 274, 116 Cal. Rptr. 260, 266.

By no means the least of the factors requiring consideration is the fact that the confidentiality which we are asked to breach here is not of the ordinary common law or statutorily provided variety. It is an expressly stated mandate of our constitution that *"All proceedings* of the Board *shall be confidential \* \* \*."* (Emphasis added.) Its intent is unmistakable, it is impervious to legislative or judicial change, and it must be implemented except as overriding Federal due process requirements compel us to do otherwise.

The Board argues that if we conclude some form of judicially compelled disclosure is permissible, the prerequisites thereto are akin to those in situations where disclosure of the identities of government "informers" is sought or where production of transcripts of the testimony of witnesses before a grand jury is requested, and that those prerequisites have not been met here. Neither of those privileges is constitutionally based, and, of course, neither is absolute. The informer's privilege must yield to the requirements of a fair trial. (*Roviaro v. United States* (1957), 353 U.S. 55, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Lewis* (1974), 57 Ill. 2d 232), and the "indispensable secrecy of grand jury proceedings" referred to in *United States v. Johnson* (1943), 319 U.S. 503, 513, 87 L.

Ed. 1546, 1555, 63 S. Ct. 1233, 1238, has suffered increasing diminution in the Federal courts. While the Supreme Court in *United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 2 L. Ed. 2d 1077, 78 S. Ct. 983, and *Pittsburgh Plate Glass Co. v. United States* (1959), 360 U.S. 395, 3 L. Ed. 2d 1323, 79 S. Ct. 1237, acknowledged the existence of instances when a particularized showing of a compelling necessity would require piercing the veil of grand jury secrecy, the policies against disclosure were generally reaffirmed. The showing of the compelling and particularized need required by *Procter & Gamble* and *Pittsburgh Plate Glass* was held to have been satisfied by government concessions and the peculiar facts in the later case of *Dennis v. United States* (1966), 384 U.S. 855, 16 L. Ed. 2d 973, 86 S. Ct. 1840, but the suggestion in that opinion of a more liberalized approach to disclosure questions has prompted a dichotomy in the lower Federal court decisions on similar questions. That divergence is typified, perhaps, by *Bast v. United States* (4th Cir. 1976), 542 F.2d 893, emphasizing that where it is necessary to breach the secrecy of grand jury proceedings, it should be done "discreetly and limitedly" and only upon a showing of a particularized need, and *Harris v. United States* (D.C. Cir. 1970), 433 F.2d 1127, holding that a defendant is automatically entitled to relevant grand jury testimony of a witness who testifies at trial. We note, however, that even the cases ordering production of privileged material have not done so in the course of an ongoing, uncompleted investigation by a governmental agency as in the case before us. (*In re Bonanno* (2d Cir. 1965), 344 F.2d 830, 834.) In fact, the Federal courts generally refuse to allow pretrial inspection of grand jury minutes simply for the purpose of preparing for trial. Annot., *Accused's Right to Inspection of Minutes of Federal Grand Jury*, 3 A.L.R. Fed. 29, 63 (1970).

Some of the reasons for secrecy in grand jury proceed-

ings, in Judicial Inquiry Board proceedings and in concealing the identities of government informers are similar, but there are additional factors militating against disclosure of Board affairs. The Supreme Court in its recent opinion *Landmark Communications, Inc. v. Virginia* (1978), 435 U.S. 829, 56 L. Ed. 2d 1, 98 S. Ct. 1535, recognized that confidentiality was uniformly regarded as an important factor in the effective operation of State judicial disciplinary commissions in that it encouraged "the willing participation of relevant witnesses by providing protection against possible retaliation or recrimination," protected judges "from the injury which might result from publication of unexamined and unwarranted complaints," maintained confidence in the judiciary by avoiding publicity regarding groundless claims of judicial misconduct made by disgruntled litigants, facilitated the commission's work by encouraging the "voluntary" resignation or retirement of judges as to whom complaints justifying removal were under consideration since their resignation or retirement would avoid the publicity attendant upon a formal charge or hearing, and made possible the adjustment of minor complaints which might appropriately be called to the judge's attention without publicity. Other than as it generally confirms the value of the confidentiality bestowed upon commission proceedings, that opinion is not particularly relevant to the issue here, however, for it held only that the first amendment did not permit the criminal punishment of a third party (a newspaper owner) who is a stranger to proceedings before a judicial review commission for publishing truthful information regarding confidential proceedings of that commission.

Other cases concerning judicial disciplinary proceedings also emphasize the need for confidentiality. In reconciling potentially conflicting provisions of its State constitution, the Supreme Court of Florida observed in *Forbes v. Earle* (Fla. 1974), 298 So. 2d 1, 4:

"The purpose [of its judicial qualifications commission] is to process complaints concerning the judiciary from any and all sources, while requiring confidentiality as a means to protect both the complainant from possible recriminations and the judicial officer from unsubstantiated charges. Confidentiality is also necessary for the Commission to carry out its responsibility to make suitable recommendations concerning judicial personnel problems that affect court efficiency. Eliminating the confidentiality of these proceedings would also eliminate many sources of information and complaints received by the Commission not only from lay citizens and litigants but also from lawyers and judges within the system."

Similarly, the Supreme Court of Michigan recently stated:

"In *In the Matter of Mikesell,* 396 Mich. 517, 534, 243 N.W.2d 86, 94 (1976), this Court addressed the policy reasons for limiting disclosure and discovery in judicial fitness proceedings:

'[T]he confidentiality provisions *** protect witnesses and citizen complainants. If the respondent and others similarly situated were allowed to discover the name of every complainant, including those who will not appear and those whose complaints have been dismissed, the free flow of information to the Commission would be curtailed. The Commission carefully investigates all complaints and this Court would not want to discourage citizen complainants from voicing their ideas.' " *In re Del Rio* (1977), 400 Mich. 665, 686-87, 256 N.W.2d 727, 735; see also *McCartney v. Commission on Judicial Qualifications* (1974), 12 Cal. 3d 512, 520-21, 526 P.2d 268, 274, 116 Cal. Rptr. 260, 266.

The case before us differs, of course, from those we have cited. It is not the typical one of a criminal defendant

seeking production of evidence in the hands of the prosecuting attorney or an agency within his control. We note that even if that were the case here, Judge Alfano, charged only with misdemeanor offenses, would not be entitled as of right to the discovery provided by our criminal discovery rules which apply only to offenses punishable by imprisonment in the penitentiary. (58 Ill. 2d R. 411, 412; *People v. Schmidt* (1974), 56 Ill. 2d 572.) It would indeed be anomalous if in these circumstances, where the crimes with which defendant is charged are not sufficiently serious to entitle him to discover evidence in the possession of his adversary, he could force disclosure of constitutionally privileged evidence in the hands of a third party.

Nor is this case like the judicial disciplinary cases earlier referred to in which the respondent judge seeks production from the charging body. Here no complaint has been filed with the Courts Commission by the Board, nor is it certain that one ever will be filed. Rather, the judge is defending himself in the circuit court, against criminal charges—misdemeanors—and may obtain, we are told, as a result of an agreement with the prosecutor, all of the liberal discovery which our rules provide for those charged with felonies. Additionally, however, he seeks in the proceedings before us to compel the Judicial Inquiry Board—an independent, autonomous body created by a constitution which classifies its proceedings as confidential—to interrupt its ongoing investigation of his conduct and deliver to him, or to the circuit court for its *in camera* inspection, the material gathered by the Board in the course of that investigation. Production is sought on the basis of his assertion, apparently unsupported by testimony or affidavit, that an unidentified investigator for the Board has questioned "substantially all of the witnesses [unidentified] including several [unidentified] who have refused to submit to interrogation by this defend-

ant." It is further asserted that the unidentified investigator "has from time to time revealed to witnesses [unidentified] friendly to defendant the substance [unexplained] of what other witnesses [unidentified] have stated," and that conflicting statements of unidentified witnesses adverse to defendant have been revealed. In our opinion such triple hearsay clearly fails to establish a basis for the extensive production embraced within the trial court's order. We earlier discussed the cases dealing with grand jury and informer privileges simply to demonstrate that, even as to them, the production here sought would be denied. There is among those cases, and the many others examined by us, none which would compel mid-inquiry, pretrial production even of grand jury minutes based upon an unverified motion which states only conclusions based upon multiple hearsay statements by unidentified persons. That motion is merely a "rummaging *** for exculpatory scraps." *United States v. Soto* (7th Cir. 1958), 256 F.2d 729, 734.

We believe defendant and the trial court failed to recognize the unique nature of the case before us, and the differing due process considerations applicable to it. Our concept of the due process guaranteed by our constitutions equates it with fundamental fairness. (*In re Murchison* (1955), 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623; *Palko v. Connecticut* (1937), 302 U.S. 319, 82 L. Ed. 288, 58 S. Ct. 149; see J. Nowak, R. Rotunda & J. N. Young, Handbook on Constitutional Law 501 (1978).) One of the reasons for permitting the limited disclosure of normally privileged grand jury testimony and informers' identities in the usual case is that the information disclosed is already known to the prosecutor or readily accessible to him. When a defendant can demonstrate a substantial need for that information which is already known or available to his adversary, considerations of basic fairness tend to favor its disclosure to him, absent compelling reasons to

the contrary. But in the case before us the prosecutor has no greater access to the information and statements sought by defendant than does defendant. As to that information the scales are not unequally balanced and no advantage rests with the prosecution. Consequently there exists substantially less compulsion to break the seal of confidentiality with which our constitution has clothed the Board proceedings.

We do not believe, however, the confidentiality provision of section 15(c) can be regarded as erecting an impenetrable barrier to any disclosure, no matter how essential that disclosure might be to a correct conclusion of the criminal proceedings in which the judge under investigation is a defendant. Such an interpretation could not withstand scrutiny in the light of due process requirements of the Federal Constitution and its supremacy clause for "[t]he impediment that an absolute, unqualified privilege would place in the way of the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions would plainly conflict with the function of the courts ***." (*United States v. Nixon* (1974), 418 U.S. 683, 707, 41 L. Ed. 2d 1039, 1063, 94 S. Ct. 3090, 3107; *Reynolds v. Sims* (1964), 377 U.S. 533, 584, 12 L. Ed. 2d 506, 540, 84 S. Ct. 1362, 1393.) In *Nixon* the Supreme Court considered whether a *subpoena* should be quashed because it demanded tapes of confidential conversations between the President and his close advisors which were asserted to be privileged from disclosure. The court there found the Presidential privilege to be "fundamental to the operation of government and inextricably rooted in the separation of powers under the Constitution." (418 U.S. 683, 708, 41 L. Ed. 2d 1039, 1064, 94 S. Ct. 3090, 3107.) Nonetheless, held the court, "the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." (418 U.S. 683, 712, 41

L. Ed. 2d 1039, 1066, 94 S. Ct. 3090, 3110.) "We conclude that when the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality [as contrasted to questions of national security], it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice. The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial." (418 U.S. 683, 713, 41 L. Ed. 2d 1039, 1066-67, 94 S. Ct. 3090, 3110.) We regard the holding and discussion in *Nixon* as dispositive of the contention that the 15(c) confidentiality provision cannot be subordinated to Federal due process needs. Nor does the fact that the Board's investigation is independent from that of the police and State's Attorney, and that the latter have no greater access to its results than does the defendant, totally insulate the Board from due process requirements. While the holding in *Brady v. Maryland* (1963), 373 U.S. 83, 10 · L. Ed. 2d 215, 83 S. Ct. 1194, that failure to disclose favorable evidence to a criminal defendant upon his request violated due process involved only evidence in the prosecutor's possession, other decisions have extended the obligation of disclosure to embrace evidence in the possession or control of other governmental agencies. (*United States v. Loman* (7th Cir. 1977), 551 F.2d 164; *United States v. Deutsch* (5th Cir. 1973), 475 F.2d 55; *United States v. Bryant* (D.C. Cir. 1971), 439 F.2d 642.) While the governmental agencies in the cited cases were, perhaps, more closely related to the prosecuting agency than is the Judicial Inquiry Board, the Board is still an agency of the prosecuting sovereign. Although having no connection with the prosecutor's office, there are similarities between the duties of that office and the Board's function in the discharge of its important responsibilities in maintaining the high standards of judicial conduct which our rules impose. In the infrequent cases where a

judge is a defendant in a criminal case the Board will undoubtedly be conducting an investigation, as it is here, to determine whether the conduct on which the criminal charge is based should also be the basis for a complaint before the Courts Commission. If in the course of that investigation the Board comes into possession of evidence or material which in the Board's opinion on its face plainly negates defendant's guilt, it would, in our judgment, be contrary to the due process philosophy underlying *Brady* to deny production of that evidence upon defendant's request. We accordingly hold that as to evidence or material in the Board's possession which on its face plainly negates defendant's guilt, and only as to such material or evidence, the confidentiality provisions of section 15(c) must yield to Federal due process requirements, and that, upon defendant's request, its production and delivery to him may be ordered. Responsibility for determining the character of such material must remain with the Board, for to permit inspection of all material by defendant would reduce the privilege to a sham. Nor would an *in camera* inspection by the court be desirable for the purpose of isolating that which we hold must be produced. The producible material is only that which on its face plainly negates guilt, and we do not doubt the Board's competency to make that determination. Precluding court inspection also avoids the possibility that lawyers would be reluctant to cooperate in Board investigations because they know their statements may be examined by judges.

The writ of *mandamus* is accordingly awarded directed to Judge Hartel to vacate his December 14 production order.

*Writ awarded.*

MR. JUSTICE CLARK, concurring in the decision:

This case requires us to balance the competing needs of two separate and distinct adjudicative processes, the ·

criminal justice process and the judicial disciplinary process. In its current posture, this case has been interfering with the effective operation of both processes. Therefore, for the reasons which follow, I concur in the award of the writ on the terms stated in the plurality opinion. However, my approach to this case differs in some respects from that stated in the plurality opinion.

Section 15(c) of article VI of our constitution provides in part, "All proceedings of the [Judicial Inquiry] Board shall be confidential except the filing of a complaint with the Courts Commission." In my opinion, this provision was intended exclusively for the protection of judges under investigation. The majority report (which is not contradicted in this respect by the minority report) of the Committee on Judiciary on Recommendations in Proposal Number 2 states: "To protect judicial officers against irresponsible charges and complaints, all proceedings of the Inquiry Board are to be confidential except the filing by it of a complaint with the Courts Commission." (6 Proceedings 867.) The committee further amplified this language later in the report:

> "The requirement that proceedings antecedent to the filing of a formal complaint be confidential has already been noted. In addition, the requirement that a majority of all members of the Inquiry Board must concur in a decision to file a complaint underscores the seriousness of such an action. There is too much at stake to permit *public* complaints to be filed by less than a majority of the entire membership of the Inquiry Board. Even a subsequent vindication of the judge by the Courts Commission will not undo the damage of a complaint based upon inadequate investigation or insufficient evidence." (Emphasis added.) (6 Proceedings 871.)

I find it persuasive that, in explaining the intent of the confidentiality provision, the drafters made no mention of an intent to protect witnesses and complainants. I therefore would construe the above-quoted language of section

15(c) of article VI of the Constitution as a protection of the judge under investigation, which that judge may waive.

Our inquiry does not end here, however, for the ability of the judge to waive the confidentiality of the Board's proceedings does not imply a corresponding right to compel their disclosure. As the plurality opinion correctly points out, the confidentiality of complaints and testimony presented to the Board serves important purposes, not the least of which is the encouragement of candor through protection against retribution. A qualified privilege against the premature disclosure of the complaints and testimony before it therefore is essential to the effectuation of the Board's constitutional mandate and may be implied therefrom.

It is extremely significant in this regard that the Constitution gives the Board the power and duty to "adopt rules governing its procedures" (Ill. Const. 1970, art. VI, sec. 15(d)). The drafters noted that "[t]he investigative procedures of the Inquiry Board are not spelled out. These are properly left to the Board's rules." (6 Proceedings 871.) I would be inclined to give great deference to a thoroughly considered and carefully drafted rule providing reasonable standards and procedures for the disclosure to a judge under investigation of information obtained through that investigation. I also would find significant the approach of the many other jurisdictions which have dealt with various aspects of this problem, in reviewing the reasonableness of any such rule. See generally *Landmark Communications, Inc. v. Virginia* (1978), 435 U.S. 829, 846-48, 56 L. Ed. 2d 1, 15-16, 98 S. Ct. 1535, 1545-46 (citations to provisions in several jurisdictions).

Since no such rule is now before us, the application of the Board's qualified privilege to the facts of this case must be analyzed generally in terms of the purposes of the privilege and the competing needs of the criminal justice

process. The Board's need for some degree of confidentiality stems primarily from its dependence upon the trust of individuals who otherwise might fear retribution at the hands of an accused judge. Compelled disclosure of the Board's records will, to some degree, undermine that trust. However, since the only instance when such disclosure can be compelled would be the rare case involving a judge against whom criminal proceedings had been instituted regarding the same or related misconduct, potential complainants and witnesses can be assured that it is highly unlikely that their testimony will be revealed.

In addition, a judge accused of criminal (including misdemeanor) misconduct is not entitled to indiscriminately demand to see everything in the Board's file on him, as was done in the instant case. Thus, on the facts of this case, and in light of the complete lack of particularity with which the accused judge's original demand was stated, I agree that the discovery permitted in this case should be limited to "evidence or material in the Board's possession which on its face plainly negates defendant's guilt." (72 Ill. 2d at 238.) However, I am not persuaded that, in a proper case, the scope of discovery afforded a judge accused in a criminal proceeding need not be somewhat broader to effectuate fully the truth-finding and exculpatory functions of the criminal justice process. In my opinion, therefore, in a proper case, discoverable material would include any information or material in the Board's possession which tends to negate defendant's guilt or which would undermine substantially the credibility of a potential witness against the defendant at trial. I would expect the Board to comply fully with both the letter and spirit of this standard, and to submit any material regarding which a reasonable basis for disagreement exists (as to its discoverability) to the court for its *in camera* inspection.

For the foregoing reasons, I concur in the award of

the writ on the terms stated in the plurality opinion.

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARD, specially concurring:

The construction of the written law, whether in statutory or constitutional form, is at times admittedly an uncertain and difficult art. The drafters of our constitution and the voters who approved it, however, would be astonished and perturbed to learn that this court has made it possible for the Judicial Inquiry Board to withhold from a criminal trial exculpatory evidence, requested by an accused judge or ordered by a trial court, which could produce a reasonable doubt of guilt. This is because the plurality says the Board need only produce upon the accused judge's request "evidence or material in the Board's possession which on its face plainly negates defendant's guilt." (72 Ill. 2d at 238.) This disclosure standard of plainly negating guilt is of course completely arbitrary and without precedent in any jurisdiction. I consider it to be offensive to the Federal command of due process and fair trial and of course to the commands of our constitution as well. An additional problem arises when one attempts to determine what is meant by the described standard. The plurality states confidently: "The producible material is only that which on its face plainly negates guilt, and we do not doubt the Board's competency to make that determination." (72 Ill. 2d at 238.) Many will say, however, that it is a standard easily stated but difficult to interpret and to apply. Whether the Board will have experienced difficulties of interpreting and applying in cases of nondisclosure propbably will never be known, for its decision not to disclose cannot be reviewed.

The fundamental of construction is to determine intent. The plurality opinion here fastens on the word

"confidential" with a literalness I am sure never was intended. I would point out that this literal interpretation also creates the following offensive anomalies so far as the policy of this court is concerned as to disciplinary proceedings against judges and against lawyers. Our Rule 766 (65 Ill. 2d R. 766) declares that the proceedings before the inquiry, hearing and review boards of the Illinois Attorney Registration and Disciplinary Commission shall be private and confidential, subject to certain specified exceptions. Court records will show, however, that the Commission, which was created by our Rule 751 (58 Ill. 2d R. 751) and which operates under this court's direction, has responded to *subpoenae duces tecum* for investigative records in matters which involved complaints filed before the Commission against attorneys. The plurality focuses on the words "all proceedings of the [Judicial Inquiry] Board shall be confidential" and states that a judge who is an accused in a criminal proceeding cannot obtain exculpatory evidence unless the evidence in the Board's possession "on its face plainly negates defendant's guilt." But an adversary of an attorney against whom a complaint has been filed can, by subpoena, secure evidence in the possession of the Commission despite our rules declaring that the proceedings before the Commission shall be confidential. It seems to me that this court will be vulnerable to a charge of giving one meaning to confidentiality when applied to attorneys and another meaning when applied to judges. We will not be able to evade this criticism by saying that one direction making proceedings confidential is set out in a rule of court and the other is set out in the Constitution, for that cannot be a critical distinction. The requirement of fair trial is not to be frustrated by either a rule of court or by a constitution. It should also be pointed out that Rule 766 states that, at the request of the attorney against whom the complaint has been filed, the proceedings shall be public. This court, in

promulgating the rule, recognized that the confidentiality provision was for the benefit of the attorney who might be complained against and could be waived by him. The plurality concludes differently in this case involving a judge and a confidentiality provision.

In *New York Times Co. v. Jascalevich* (Aug. 1, 1978), 47 U.S.L.W. 3066, 3067, Justice White, sitting as circuit justice, stated that there was no constitutional privilege for newsmen to withhold subpoenaed documents material to the defense of a criminal case. The circumstances considered by Justice White, though not in precise alignment with those here, resemble them. Justice White's denial of the stay applied for supports the position that the plurality opinion here seriously errs in limiting the right to prepare a defense.

I would also observe that the principal opinion speaks of the "encouragement and protection of witnesses" (72 Ill. 2d at 230) as a consideration in denying the production even of evidence that would exculpate an accused. Concern for the safety of witnesses is hardly a factor when the evidence is exculpating, unless we act on a devastating assumption that the People will undertake to harass and intimidate witnesses.

I suppose it is inevitable that there will be cases in which the Judicial Inquiry Board will file complaints with the Courts Commission after the trial of a judge in which exculpatory evidence under the plurality's view was withheld from the trial court or jury and the judge was found guilty. Discovery will be available to the judge in the Courts Commission proceeding, and he may in a given case then obtain exculpating evidence which, if it had been available earlier, would almost certainly have resulted in his acquittal in the criminal proceeding. That will be an irony to ponder when and if it occurs.

Notwithstanding my disagreement with much of what the plurality opinion states, I consider that the order of

the trial court was too broad that directed the Board to make available all statements that a witness gave earlier to the Board. I think that the trial court's order should have been confined to statements that were material, relevant and usable to impeach.

MR. JUSTICE MORAN, also specially concurring:

While I believe a writ of *mandamus* should issue in this case, I differ from my colleagues on the command of the writ and the reasons for it. I believe, as does Mr. Justice Clark, that a criminal defendant is entitled to a broader scope of discovery than that permitted in the plurality's opinion but, in contrast to Mr. Justice Clark, feel this is a proper case for that broader scope. The trial court's order, requiring disclosure, attempted to strike a proper balance between the confidentiality requirement of article VI, section 15(c), of the Illinois Constitution and the defendant's guarantee of a fair trial under the fifth and sixth amendments to the United States Constitution. It is the procedural aspects of the order that I would modify.

The Board, in its brief, has enumerated policy reasons for required confidentiality, reasons additional to that of protecting judicial officers from irresponsible charges and complaints. Mr. Justice Clark has aptly observed that neither the reports of the constitutional convention nor relative debates indicate that the confidentiality requirement of section 15(c) was intended to serve any purpose other than to protect the judicial officer under investigation. Additional purposes for the confidentiality requirement must be inferred from the nature of the Board's duties.

There is no question that the Board can fulfill its responsibilities only if complainants and witnesses freely come forward with information. Such free flow of information depends, in part, on a person's expectation of confidentiality to shield him from possible recrimination

by an individual subject to investigation. It is this countervailing need to protect complainants and witnesses so as to encourage the voluntary disclosure of information which necessitates the balancing of defendant's right to a fair criminal trial against the implied policy which justifies nondisclosure. In balancing these needs, the plurality has emphasized the constitutional guarantee of confidentiality, forgetting, however, that "[t]he right to the production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.' Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced." *United States v. Nixon* (1974), 418 U.S. 683, 711, 41 L. Ed. 2d 1039, 1066, 94 S. Ct. 3090, 3109.

In addressing the defendant's right to disclosure, the plurality has extensively discussed the law regarding discovery in the criminal setting. The prosecutor's equal or greater access to the same information is, however, in my opinion, here irrelevant, for it is defendant's right in a criminal trial to the production of all available evidence with which we are here concerned.

The plurality limits disclosure to evidence which "on its face plainly negates defendant's guilt." In my opinion, due process requires disclosure of all information or material in the Board's possession (excluding the Board's work product) which *tends* to exculpate the defendant, as well as statements by a complainant or witness which would undermine the credibility of that person's testimony against the defendant at his criminal trial.

As to exculpatory evidence, the need for confi-

dentiality is minimal. Complainants and witnesses who give exculpatory testimony before the Board have little reason to fear recrimination. Moreover, the need of a criminal defendant for any evidence which might tend to exculpate him is particularly acute. As this court has stated in the past, for the policy of confidentiality to be soundly based, it must be more desirable to risk concealment of the truth than to disrupt the values that such policy supports. (See *People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 293.) Here, the need for confidentiality does not outweigh defendant's need for that which might vindicate him in his criminal trial.

As to statements which undermine the credibility of a witness who testifies against the defendant at a criminal trial, discoverability should also be allowed. The policy of protecting a witness' expectation of privacy must yield as to those matters to which he has testified in the criminal proceeding. (Accord, *People v. Johnson* (1964), 31 Ill. 2d 602, 606, regarding the disclosure of secret grand jury testimony.) Evidence which strikes at the credibility of a witness in a criminal case is as crucial to the defendant as that which tends to exculpate his guilt.

It was previously noted that the trial court's order attempted to balance the countervailing constitutional provisions discussed. The order compelled the Board to, within 14 days, deliver to the court for its inspection all material acquired during the Board's investigation. That which tended to exculpate the defendant was to be released to the defendant. The order further required that, at the time of trial, the Board was to produce all statements made by any person named in the State's list of witnesses in the criminal proceeding, the statements to be made available to the defendant for impeachment purposes at the conclusion of a witness' direct trial testimony. I believe, however, that the order is procedurally too broad.

To accommodate the confidentiality requirement to

the fullest, while, simultaneously, effectuating defendant's right to a fair criminal trial, the initial determination of whether there exists any exculpatory evidence (not just evidence which "on its face plainly negates defendant's guilt") should be made by the Board. Where such evidence exists, the Board, on proper order of the court, should release it to the defendant forthwith. If Board members disagree on whether certain material or evidence is, in fact, exculpatory, the disputed material or evidence should be submitted to the trial court for its *in camera* inspection and its ultimate determination. In this regard, Mr. Justice Clark and I take similar positions.

Statements made before the Board by a witness who testifies in the criminal proceedings should be made available for the court's *in camera* inspection. The court should determine that portion of the statement which is relevant to the witness' in-court testimony and turn only that portion over to defendant's counsel for possible impeachment purposes.

These procedures, in my opinion, would assure the confidentiality of material that should not be disclosed and afford the defendant his constitutional right to a fair criminal trial.

I would, therefore, award the writ directing the trial court to modify its order to conform to the views here expressed.