No. 2--06--1275      Filed: 10-31-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DAVID M. NALEWAY and A.N., | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 04--CH--105 |
| KAREN L. AGNICH, | ) ) ) | Honorable Bonnie M. Wheaton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, David Naleway and his six-year-old daughter A.N., appeal from a jury verdict in favor of defendant, Karen Agnich, on plaintiffs' action for defamation and false-light invasion of privacy in connection with defendant's accusing Naleway of sexually abusing A.N. On appeal, plaintiffs argue that the trial court tendered an incorrect jury instruction and that the trial court erred in barring them from questioning defendant regarding her charge of misconduct against the judge presiding over the trial. For the reasons that follow, we affirm the judgment of the trial court.

In 2003, Naleway was married to defendant's sister, Kristine, and A.N. was three years of age. Late in 2003, A.N. underwent surgery to remove a deep and hairy mole from her back and to remove growths called molluscum contagiosum from her thighs, buttocks, and groin. Just before surgery, Kristine and defendant met with A.N.'s dermatologist, Dr. Annette Wagner. Defendant, a podiatrist, informed Dr. Wagner that she was concerned that the molluscum growths were actually genital warts

caused by sexual abuse. (In his testimony, Naleway stated that defendant never asked him if he had any genital warts; he testified that he in fact did not.) Dr. Wagner examined A.N. while she was under anesthesia before the surgery and determined that the growths were in fact molluscum and not genital warts. She testified that she also performed a thorough physical examination, including a genital examination, on A.N. and found no signs of abuse. Dr. Wagner recalled that she thereafter informed Kristine and defendant that the growths were not genital warts. She further recalled that she communicated "clearly" that she had performed a full physical examination and "had absolutely no concerns and found nothing on physical exam to substantiate concerns for sexual abuse."

Though defendant testified that she had professionally treated A.N. in connection with her surgery by prescribing pain medication afterwards and also by rendering medical opinions upon Kristine's request, Kristine and Naleway both testified that they never sought defendant's professional advice, never relied on any professional advice from defendant, and did not ask for defendant's prescription. Kristine further testified that she did not personally tell defendant about A.N.'s surgery and did not want defendant to be present. In response, defendant adduced testimony from a police officer who interviewed Kristine and recalled her saying that she had shown A.N.'s molluscum to defendant.

On the weekend following her surgery, A.N. stayed with defendant (at defendant's insistence, according to Kristine's testimony). Defendant testified that, over the course of the weekend, A.N. revealed, through conversation and conduct, that Naleway had sexually abused her, and defendant testified that she relayed her suspicions to Kristine. Defendant reported that she told Kristine that, if Kristine did not do something about the abuse, defendant would. Kristine testified that defendant warned that defendant's complaint might lead to Naleway and Kristine losing custody of A.N.

(Plaintiffs adduced this testimony from Kristine, as well as testimony regarding what Kristine termed defendant's "obsess[ion]" with A.N. and testimony regarding defendant's low opinion of Kristine's parenting skills, to imply that defendant was motivated to gain custody of A.N. herself.) Kristine testified that she did not believe defendant's allegations either when they were made or when they were discussed at trial.

That night, after relaying her allegations to Kristine, defendant contacted the Department of Children and Family Services (DCFS) and reported her suspicions, and, for A.N.'s safety, DCFS ordered Naleway to leave the residence. The next day, Naleway, Kristine, and A.N. were interviewed by investigators from the local police and DCFS. Ultimately, neither police nor DCFS pursued the case beyond their initial investigation. Naleway testified that he arranged for a letter to be sent to defendant to inform her that DCFS had opted not to pursue investigation of him.

A.N.'s pediatrician testified that defendant also contacted him in September to relay her accusations against Naleway. The pediatrician recalled that he replied by telling defendant that the molluscum were not genital warts and that he did not suspect abuse.

In December of the same year, defendant again contacted DCFS with a new charge against Naleway. Just as with the first charge, DCFS conducted an initial investigation and did not pursue the case further.

The following January, plaintiffs filed suit against defendant for, among other things, defamation based on defendant's sexual-abuse accusations against Naleway. The matter proceeded to a jury trial, and the jury found in favor of defendant. Plaintiffs timely appealed, without filing a posttrial motion (see 735 ILCS 5/2--1202 (West 2006)).

While this appeal was pending, defendant moved to dismiss the appeal or, alternatively, for summary affirmance of the judgment, due to plaintiffs' failure to file a posttrial motion. See Johnson v. Transport International Pool, Inc., 345 Ill. App. 3d 471, 473 (2003) ("if the trial court has entered judgment on a jury verdict, and a party fails to file a posttrial motion, that party has forfeited appellate review of all waivable issues"). In response to the motion, plaintiffs suggested that we could consider the issues under the plain-error doctrine or under the principle that procedural default is a limitation on the parties and not on the court. In a separate order, we summarily affirmed the trial court's judgment on three of plaintiffs' five arguments. We now address only the two remaining issues.

Before addressing those two remaining issues, we provide a brief background of the legal principles underlying this case. To establish defamation, a plaintiff must present facts showing that the defendant made a defamatory statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 579 (2006). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." Solaia, 221 Ill. 2d at 579. Statements that do not contain factual assertions are protected under the first amendment and may not form the basis of a defamation action. J. Maki Construction Co. v. Chicago Regional Council of Carpenters, 379 Ill. App. 3d 189, 199-200 (2008). Likewise, a statement may not form the basis of a defamation action where it is substantially true. J. Maki Construction, 379 Ill. App. 3d at 203.

There are two types of defamatory statements: defamation per se and defamation per quod. Brennan v. Kadner, 351 Ill. App. 3d 963, 968 (2004). In an action for defamation per quod, the

plaintiff must plead and prove actual damages in order to recover. Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc., 227 Ill. 2d 381, 390 (2008) (summarizing appellate court decision). If a defamatory statement is actionable per se, on the other hand, the plaintiff need not plead or prove actual damage to his or her reputation to recover. Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 87 (1996). "Rather, statements that fall within these actionable per se categories are thought to be so obviously and materially harmful to [the plaintiff] that injury to the plaintiff's reputation may be presumed." Bryson, 174 Ill. 2d at 87.

"In Illinois, there are five categories of statements that are considered defamatory per se: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." Solaia, 221 Ill. 2d at 579-80. Plaintiffs asserted that defendant made defamatory statements accusing Naleway of a crime; plaintiffs thus accused defendant of defamation per se.

At trial, defendant did not deny that she made the allegedly defamatory statements about Naleway; instead, she sought refuge under a qualified privilege and under the Abused and Neglected Child Reporting Act (Reporting Act) (325 ILCS 5/1 et seq. (West 2002)).

A defamatory statement is not actionable if it is privileged. Solaia, 221 Ill. 2d at 585. The presence or absence of a privilege is a question of law. Solaia, 221 Ill. 2d at 585. "There are two classes of privileged statements: those subject to an absolute privilege, and those subject to a conditional or qualified privilege." Solaia, 221 Ill. 2d at 585. "An absolute privilege provides a

complete bar to a claim for defamation, regardless of the defendant's motive or the unreasonableness of his or her conduct." Thompson v. Frank, 313 Ill. App. 3d 661, 664 (2000). A qualified privilege, on the other hand, can be exceeded and the privilege thereby defeated in circumstances where the defendant makes false statements with an intent to injure or with a reckless disregard for the truth. Kuwik v. Starmark Star Marketing & Administration, Inc., 156 Ill. 2d 16, 30 (1993). A qualified privilege protects communications that would normally be defamatory and actionable, in order to effect the policy of protecting honest communications of misinformation in certain favored circumstances and thus facilitate the availability of correct information. Kuwik, 156 Ill. 2d at 24. To determine if a qualified privilege exists, a court "looks only to the occasion itself for the communication and determines as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication so as to make it privileged." Kuwik, 156 Ill. 2d at 27. In determining whether a qualified privilege exists, a court is to consider only the general type of communication involved, not the particular communication involved in the case sub judice. Kuwik, 156 Ill. 2d at 28, quoting 2 F. Harper, F. James & O. Gray, Torts §5.25, at 214 (2d ed. 1986).

The determination as to whether a qualified privilege exists in a given case is a question of law reserved to the trial court. Kuwik, 156 Ill. 2d at 25. After the trial court has determined that the defendant holds a qualified privilege, the only factual issue left for a jury is the question of whether the defendant abused the privilege in making the allegedly defamatory statement. Kuwik, 156 Ill. 2d at 25. Here, the trial court determined that the type of communication at issue--defendant's relaying her suspicions about Naleway to police and DCFS--should receive a qualified privilege. Plaintiffs do not dispute that determination.

Defendant also asserted that her statements were protected under the Reporting Act, which provides that "[a]ny physician *** having reasonable cause to believe a child known to them [sic] in their [sic] professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to [DCFS]." 325 ILCS 5/4 (West 2002). "In addition [to those who are required to report under section 4], any other person may make a report if such person has reasonable cause to believe a child may be an abused child or a neglected child." 325 ILCS 5/4 (West 2002). "Any person *** participating in good faith in the making of a report or referral *** shall have immunity from any liability, civil, criminal or that otherwise might result by reason of such actions." 325 ILCS 5/9 (West 2002). "For the purpose of any proceedings, civil or criminal, the good faith of any persons required to report ***, or permitted to report, cases of suspected child abuse or neglect *** shall be presumed." 325 ILCS 5/9 (West 2002). The trial court determined that there was a factual question as to whether A.N. was "known to [defendant] in [her] professional or official capacity" (325 ILCS 5/4 (West 2002)) such that defendant was a mandatory reporter, and the trial court therefore left that question to the jury.

With that legal background, we move to address plaintiffs' arguments on appeal. Plaintiffs first argue that the jury instruction regarding defendant's possession of a qualified privilege incorrectly stated the law, confused the jury, and misrepresented plaintiffs' position about whether they agreed that defendant was a mandatory reporter.

It is within the trial court's discretion to determine which instructions to give the jury, and a reviewing court will not disturb such a determination absent a showing that the trial court abused its discretion. Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 273 (2002). In the jury-instruction context, the standard for determining whether a court has abused its

discretion is whether, as a whole, the jury instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles. Schultz, 201 Ill. 2d at 273-74. We will reverse the trial court for giving faulty jury instructions only where the instructions clearly misled the jury and resulted in prejudice to the appellant. Schultz, 201 Ill. 2d at 274.

The trial court gave the jury a modified version of Illinois Pattern Jury Instructions, Civil, No. 20.01 (2006). The instruction stated as follows:

"The plaintiffs claim that they were injured and sustained damage, and that the defendant was responsible for their injuries in one or more of the following respects:

a. The defendant defamed the Plaintiffs by representing to law enforcement authorities and others that Plaintiff David Naleway had sexually abused [A.N.];

b. The defendant placed the Plaintiffs in a false light before the public by representing to law enforcement authorities and others that Plaintiff David Naleway had sexually abused [A.N.].

The plaintiffs further claim that one or more of the foregoing was a proximate cause of their injuries.

The defendant denies that she defamed the plaintiffs.

The defendant also sets up the following affirmative defenses:

a. The defendant has a qualified privilege to make the statements regarding the plaintiff [sic] and she did not abuse her privilege; and

b. the defendant is immune from liability for making the statements regarding the plaintiff [sic] because she was a mandated or permitted reporter under the [Reporting Act], and she made said statements in good faith.

The plaintiff[s] assert[] that the defendant abused her qualified privilege and that she is not entitled to immunity under the Abused and Neglected Child Reporting Act.

The defendant further denies that the plaintiff[s] [were] injured or sustained damages."

Another instruction told the jury that defendant enjoyed a qualified privilege and that the jury was charged with determining whether the privilege had been abused.

Plaintiffs' initial contention is that we must reverse the jury's verdict because the above instruction, which stated that plaintiffs "assert[ed] that the defendant abused her qualified privilege," incorrectly implied that plaintiffs agreed that defendant's communication was entitled to a qualified privilege when, in fact, plaintiffs disputed that point. We disagree. The trial court determined that defendant's communication was qualifiedly privileged. The issue of whether plaintiffs agreed with that determination was immaterial to the jury's verdict. Thus, even if we were to agree with plaintiffs that the above instruction was faulty for the reason stated, plaintiffs cannot make the showing of prejudice necessary to mandate reversal. See Schultz, 201 Ill. 2d at 274.

Plaintiffs next assert that the above instruction was erroneous because defendant "presented no evidence" that she knew A.N. in a professional capacity so as to be a mandatory reporter under the Reporting Act, and thus plaintiffs argue that the issue should not have been presented to the jury.

" ' "All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction." ' [Citations.]" LaFever v. Kemlite Co., 185 Ill. 2d 380, 406 (1998). The evidence required to justify the trial court's giving an instruction may be insubstantial, and the question of what issues have sufficient support in the evidence to allow an instruction is a matter within the trial court's discretion. LaFever, 185 Ill. 2d at 406. We disagree

with plaintiffs' assertion that there was no evidence to support the notion that defendant was a mandated reporter. Although there was substantial evidence, primarily from Naleway and Kristine, that defendant had no part in A.N.'s treatment, defendant herself testified that she examined A.N. at Kristine's request, and the police officer who interviewed Kristine offered testimony to confirm defendant's position. Accordingly, we reject plaintiffs' position that the evidence did not justify the instruction regarding the Reporting Act.

We also disagree with plaintiffs' contention that the trial court should have instructed the jury that "malice is presumed under defamation per se." Plaintiffs seem to imply in their brief that the trial court should have instructed the jury to apply a presumption of malice in determining whether defendant abused her qualified privilege. We cannot adopt this approach. If, as plaintiffs seem to assert, the malice necessary to overcome a qualified privilege were conclusively presumed in every action for defamation per se, that presumption would always eviscerate any qualified privilege, and the idea of a qualified privilege in a defamation per se case would become meaningless.

Plaintiffs draw their assertion that malice is presumed in defamation per se cases from precedent that admittedly gives superficial support to their position. See, e.g., Myers v. The Telegraph, 332 Ill. App. 3d 917, 925 (2002) (in a defamation per se case, "three presumptions arise: a presumption of falsity, a presumption of damage, and a presumption of malice"); Joseph v. Collis, 272 Ill. App. 3d 200, 210 (1995) ("Once it is determined that written or printed words are libelous per se, a plaintiff has the right to a cause of action for defamation without proof of malice and without a showing of special damages, as both malice and damages are presumed"); Rosner v. Field Enterprises, Inc., 205 Ill. App. 3d 769, 790 (1990) ("Once it is determined that written or printed words are actionable per se or libelous per se, plaintiff has the right to a cause of action for

defamation without proof of malice and without a showing of special damages, as both malice and damages are presumed"). However, these cases convey a misleading description of defamation per se.

To explain the mistake underlying plaintiffs' argument, we offer a brief digression into the development of the law of defamation. In the earliest actions for defamation, dating back to the Middle Ages, animus or bad intent was considered an element of the cause of action. J. Sipe, "Old Stinking, Old Nasty, Old Itchy Old Toad:" Defamation Law, Warts and All (A Call for Reform), 41 Ind. L. Rev. 137, 139 (2008). However, as the law evolved, courts discarded malice as an element of defamation:

> "But in an ordinary action for a libel or for words, though evidence of malice may be given to increase the damages, it never is considered as essential, nor is there any instance of a verdict for defendant on the ground of want of malice." Bromage v. Prosser, (1825) 107 Eng. Rep. 1051, 1055 (K.B.)

As a way to accommodate the idea that malice was no longer required as a element of defamation, Illinois common law came to assign a prima facie inference of malice to the publication of defamatory material (see, e.g., Adair v. Timblin, 186 Ill. App. 133, 136 (1914), quoting Wright v. Woodgate, 2 Cromp. M. & R. 573), and, at that time, in the absence of some privilege, a plaintiff needed to show malice only as a prerequisite to obtaining punitive damages (see, e.g., Lorillard v. Field Enterprises, Inc., 65 Ill. App. 2d 65, 78 (1965) ("In order to recover punitive damages in a libel action some malice must be found")).[1] It is in this context that courts stated that malice should be

---

[1] The United States Supreme Court later held on first amendment grounds that malice need be shown in cases of defamation regarding public plaintiffs, media defendants, and/or matters of

presumed in cases of defamation per se. Lorrillard, a case from 1965 that appears in the chain of precedent underlying the three cases that superficially support plaintiffs' position, illustrates this development:

> "In order to recover punitive damages in a libel action some malice must be found. If the words are held to be per se actionable, the necessary malice is imputed from the words themselves; the law conclusively presumes malice in law, and general damages, without proof of loss or injury, are conclusively presumed." Lorillard, 65 Ill. App. 2d at 78.

See also Cook v. East Shore Newspapers, Inc., 327 Ill. App. 559, 595 (1945) ("where the defamation is actionable per se, the general damages without proof of loss or injury, is conclusively presumed. Where actual malice exists, punitive damages may be awarded"); Cooper v. Illinois Publishing & Printing Co., 218 Ill. App. 95, 117 (1920) ("as where the words are libelous per se, exemplary and punitive damages may be allowed even though based only upon implied malice").

However, in the time since Lorillard, courts have largely dropped the confusing reference to malice as an element of defamation or of certain types of damages in a defamation case. Thus, instead of stating that malice and damages are presumed in an action for defamation per se, the modern formulation of defamation per se explains simply that damages are presumed. E.g., Bryson, 174 Ill. 2d at 87.

The common-law justification for the qualified defamation privilege has also evolved with the changing standards for defamation. The qualified privilege was at one time seen to " 'rebut[] the

_____

public concern. New York Times Co. v. Sullivan, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964). As this case involves only private parties, we do not include the New York Times malice requirement in our discussion.

prima facie inference of malice arising from [a defamatory statement] and throw[] on [the plaintiff] the onus of proving malice.' " (Emphasis omitted.) Adair, 186 Ill. App. at 136, quoting 2 Cromp. M. & R. 573; see also Bloomfield v. Retail Credit Co., 14 Ill. App. 3d 158, 166 (1973) (citing Adair for the same proposition). However, perhaps as a reflection of the fact that courts no longer require a statement to have been malicious to be considered defamatory, courts now view the qualified privilege not as rebutting the presumption of malice that attaches to a defamatory statement, but instead as protecting communications that would otherwise be actionable. See Kuwic, 156 Ill. 2d at 30. The defendant's "malice" in making an otherwise qualifiedly privileged defamatory statement is relevant now because it may demonstrate that the defendant exceeded or abused the qualified privilege, so that liability should attach. Kuwik, 156 Ill. 2d at 30.

Even so, we warn that "malice" is imprecise shorthand to describe the circumstances under which a qualified privilege will be considered abused and thereby forfeited. See W. Prosser, Torts §115, at 794-95 (4th ed. 1971) ("if the privilege is otherwise established ***, the addition of the fact that the defendant feels indignation and resentment toward the plaintiff and enjoys defaming him will not always forfeit [the privilege]"). Courts now often instead use the term "actual malice" to describe the circumstances under which a defendant will be seen to have abused a qualified privilege. See Kuwic, 156 Ill. 2d at 30. "[A]n abuse of [the] qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." Kuwic, 156 Ill. 2d at 30.

With that digression, we return to the instant case. In arguing that, because this was a case of defamation per se, the jury here should have been instructed to presume malice to overcome

defendant's privilege (instead of being instructed that actual malice was required in order to defeat the qualified privilege attached to defendant's statements), plaintiffs misconceive the role of malice in a case of a qualifiedly privileged communication of defamation per se. The malice plaintiffs refer to as being presumed in a defamation per se case is the malice that used to be necessary to establish damages. Today, however, we do not use the word "malice" in this context; we instead say that a plaintiff who establishes defamation per se need not prove damages in order to recover. In directing us to the case law we cite above as giving superficial support to their position that malice should be presumed for purposes of assessing the qualified privilege in actions for defamation per se, plaintiffs invoke boilerplate that retains and misstates vestiges of an antiquated view of the law. Further, even if the law did retain a presumption of malice in defamation per se cases, that presumption would relate only to damages, and not to the qualified privilege.

Based on the above discussion, we disagree with plaintiffs that the jury should have been instructed to presume malice for purposes of deciding the applicability of a qualified privilege in this case, and we reject plaintiffs' argument that the verdict here should be reversed due to faulty jury instructions. To the extent the language used in Myers, 332 Ill. App. 3d 917, Joseph, 272 Ill. App. 3d 200, and Rosner, 205 Ill. App. 3d 769, suggests differently, we depart from those decisions.

Plaintiffs' second argument on appeal is that the trial court committed reversible error by precluding them from questioning defendant about the contents of a complaint she filed with the Judicial Inquiry Board (JIB) against the judge presiding over the trial. (Defendant attached the complaint to a pretrial motion for substitution of judge that was eventually denied.) During trial, plaintiffs sought to introduce into evidence defendant's JIB complaint against the trial judge and to examine defendant regarding her purported allegation in the complaint that she would continue to

pursue charges of sexual abuse by Naleway. The trial court recognized that the JIB complaint might be relevant, but it nevertheless refused to allow plaintiffs to adduce testimony regarding the complaint, on the ground that the information was privileged.

As a threshold issue, defendant asserts that the transcript of the hearing at which the trial court disallowed plaintiffs' evidence does not specifically identify the document plaintiffs sought to introduce, and defendant further observes that plaintiffs never tendered any document as evidence for the record. Thus, defendant argues, the record is not sufficiently clear to allow our review of this issue. We disagree.

During Naleway's testimony, plaintiffs' counsel attempted to question Naleway as to whether he had any basis to believe that defendant intended to file further charges against him. Defense counsel objected, and, at the ensuing sidebar discussion, the trial court informed plaintiffs' counsel that he could not ask Naleway about his "fears about what [defendant] may or may not do" unless he could elicit some support for those fears. Plaintiffs' counsel responded that "the defendant wrote an affidavit out, and I think you're aware of it, that said that she intends to file further charges." Counsel further explained that the affidavit was "part of the matter that involved [the trial judge]" and "part of their motion." The trial court did not allow plaintiffs' counsel to question Naleway regarding the document. After the close of defendant's case, plaintiffs' counsel and the trial court engaged in the following colloquy:

"[COUNSEL]: *** I would like to call [defendant] as a rebuttal witness based on what we told your Honor during the trial; that there was a statement or actually a letter *** that we tendered to you during Mr. Naleway's--

THE COURT: This is a privileged communication. I'm not going to allow that.

[COUNSEL]: Not the entire exhibit, just the statement about the fact that she believes that this has still--that [A.N.] is still being abused by Mr. Naleway and this letter was written in May of this year.

THE COURT: No, I'm not going to allow any testimony with regard to that affidavit."

The common-law record includes defendant's motion for substitution of judge for cause, to which defendant appended a copy of her JIB complaint against the trial judge. The complaint, which bears defendant's signature and is dated May 2006, includes the following passage:

"[The trial court] put a restraining order on me[,] the mandated reporter, so that I cannot help my niece. I am the only one who has tried to help her. I cannot call the police or DCFS according to [the trial court] to report further abuse which I know has been occurring."

Even though plaintiffs did not tender the complaint separately as an exhibit, we can easily infer from the above portions of the record that the JIB complaint was the document the trial court barred plaintiffs from using to question defendant. Because the record allows our review of plaintiffs' argument that the trial court erred in excluding testimony regarding defendant's JIB complaint, we address that argument on its merits.

Normally, a trial court's decision regarding the admission or exclusion of evidence rests within its sound discretion and will not be disturbed absent an abuse of that discretion. People ex rel. Department of Transportation v. Kotara, L.L.C., 379 Ill. App. 3d 276, 286 (2008). However, where the issue on appeal is not whether the trial court properly exercised its discretion to exclude evidence but instead whether the trial court misinterpreted the law in excluding evidence, the question presented on appeal is one of law, and our review is de novo. See Townsend v. Sears,

Roebuck & Co., 227 Ill. 2d 147, 154 (2007) (questions of law are reviewed de novo); see also Najas Cortes v. Orion Securities, Inc., 362 Ill. App. 3d 1043, 1047 (2005) (a trial court abuses its discretion when it makes an error of law). Because the basis of the trial court's decision to exclude the JIB complaint was its determination that the complaint was privileged as a matter of law, plaintiffs' challenge to that decision presents a legal question, which we review de novo.

On the question of whether the JIB complaint was privileged, the parties direct us to our supreme court's decision in People ex rel. Illinois Judicial Inquiry Board v. Hartel, 72 Ill. 2d 225 (1978). In Hartel, Judge Charles Alfano had been arrested for two misdemeanor offenses, and the JIB began an investigation of the incidents. Hartel, 72 Ill. 2d at 227. During his criminal trial, Alfano sought to compel the JIB to disclose the fruits of its investigation so that he could obtain any exculpatory evidence the JIB may have uncovered. Hartel, 72 Ill. 2d at 227-28. The trial court ordered the JIB to produce its evidence, and the JIB filed an original petition for mandamus with the supreme court. Hartel, 72 Ill. 2d at 227-28. Our supreme court noted that the JIB, which was created by the Illinois Constitution, was authorized under article VI, section 15(c), of the constitution to conduct investigations, receive or initiate complaints concerning judges, conduct investigations thereon, and file a complaint with the Courts Commission where an investigation revealed a reasonable basis to charge a judge with misconduct or disability. Hartel, 72 Ill. 2d at 229. That section also provided (as it now provides) that "[a]ll proceedings of the [JIB] shall be confidential except the filing of a complaint with the Courts Commission." Ill. Const. 1970, art. VI, §15(c); see Hartel, 72 Ill. 2d at 229. The supreme court ultimately held that federal due process concerns mandated that Alfano be allowed access to the JIB's evidence, but it emphasized that, as a clear constitutional mandate, the confidentiality provision of section 15(c) "is impervious to legislative

or judicial change, and it must be implemented except as overriding Federal due process requirements compel [courts] to do otherwise." Hartel, 72 Ill. 2d at 230.

The parties here debate whether the interests at stake in this case rise to the same level as those at play in Hartel, so that those interests should override the confidentiality language of section 15(c). However, by focusing on the interests of the person seeking to use the JIB evidence instead of the identity of the party disclosing the JIB evidence, the litigants overlook a fundamental distinction between this case and Hartel. In Hartel, the question was whether the JIB could be compelled to disclose information relating to an investigation. Here, by contrast, the JIB is not directly involved in the action, and the question is whether the contents of a JIB complaint already publicized by a private party may be used at trial.

Article VI, section 15, of the Illinois Constitution created the JIB and outlines rules for its operation, but we do not read it as governing, or even relating to, the behavior of private parties. See Ill. Const. 1970, art. VI, §15. Therefore, section 15(c) mandates confidentiality of JIB proceedings, but that mandate, just like section 15 as a whole, applies to the JIB, not to private parties. While section 15(c) would have precluded the JIB from revealing defendant's complaint or its contents, it did not preclude plaintiffs' use of that complaint once defendant disclosed it. Accordingly, we conclude that the trial court erred in finding that the contents of a JIB complaint, which defendant herself disclosed by appending it to a motion filed in this case, was privileged and could not be used as evidence.

Although we conclude that the trial court erred in excluding the JIB complaint evidence on the ground that it was privileged, our discussion does not end there. In her brief, defendant argues that, notwithstanding the privilege issue, the JIB evidence was properly excluded as inappropriate

rebuttal evidence. Plaintiffs' argument regarding the JIB complaint centers on the trial court's refusal to allow them to call defendant as a rebuttal witness to answer questions regarding the complaint. However, as defendant observes, plaintiffs called defendant as a witness in their case-in-chief but chose not to question defendant regarding the complaint at that time. In challenging the trial court's decision not to allow them to question defendant regarding the JIB complaint as rebuttal, plaintiffs fail to direct us to any portion of defendant's evidence that the JIB evidence would have served to rebut. In fact, plaintiffs' response to defendant's point that the JIB evidence was improper rebuttal concedes this very point: in their reply brief, plaintiffs assert that they were "seeking to recall Defendant in an effort to obtain additional testimony regarding malice." The purpose of rebuttal, of course, is not to provide a second opportunity to introduce evidence that could have been introduced in a plaintiff's case-in-chief. Rather, "[r]ebuttal evidence is admissible 'if it tends to explain, repel, contradict or disprove the evidence of [the] defendant.' [Citation.]" Lagestee v. Days Inn Management Co., 303 Ill. App. 3d 935, 942 (1999). Because plaintiffs have not identified for us any portion of defendant's evidence that the JIB evidence would have rebutted, we conclude that they have not met their burden to establish reversible error.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

JORGENSEN and BURKE, JJ., concur.