298 So.2d 1 (1974)
John R. FORBES, Chairman, Article V Subcommittee of the House of Representatives Committee On the Judiciary and Duly Constituted Committee of the Florida Legislature, Petitioner,
v.
Richard T. EARLE, Jr., As Chairman of the Judicial Qualifications Commission, a Constitutional Body, Respondent.
No. 45454.
Supreme Court of Florida.
May 28, 1974.
*2 Thomas F. Woods of Woods & Johnston, Tallahassee, for petitioner.
John E. Mathews, Jr., Tallahassee, for respondent.
OVERTON, Justice.
The petitioner, a legislative subcommittee chairman, seeks a writ of mandamus compelling the Chairman of the Judicial Qualifications Commission to comply with a subpoena duces tecum to present all files in the possession of the Judicial Qualifications Commission containing information of asserted judicial misconduct which could lead to impeachment. The subpoena also requires the Chairman to testify concerning said matters.
This action necessarily requires a construction and interpretation of the legislative power of impeachment of judicial officers[1] and the judicial power of discipline and removal of judicial officers.[2] These sections must be construed in a manner that complement each other rather than a means of constitutional confrontation.
The doctrine of separation of powers and the independence of each branch to carry out its constitutional functions carries with it a responsibility of each branch to cooperate with the other branches to accomplish the purpose of each constitutional provision.
The power of the Judicial Qualifications Commission is prescribed in Florida Constitution, Article V, Section 12(c), (d), (e), F.S.A., as follows:
"Section 12. Discipline; removal and retirement. 
"(c) The supreme court shall adopt rules regulating proceedings of the commission, the filling of vacancies by the appointing authorities and the temporary replacement of disqualified or incapacitated members. After a recommendation of removal of any justice or judge, the record of the proceedings before the commission shall be made public.

"(d) Upon recommendation of two-thirds of the members of the judicial qualifications commission, the supreme court may order that the justice or judge be disciplined by appropriate reprimand, or be removed from office with termination of compensation for willful or persistent failure to perform his duties or for other conduct unbecoming a member *3 of the judiciary, or be involuntarily retired for any permanent disability that seriously interferes with the performance of his duties. After the filing of a formal proceeding and upon request of the commission, the supreme court may suspend the justice or judge from office, with or without compensation, pending final determination of the inquiry.
"(e) The power of removal conferred by this section shall be both alternative and cumulative to the power of impeachment and to the power of suspension by the governor and removal by the senate." [Emphasis supplied]
Under this provision, the Judicial Qualifications Commission is required to recommend action affecting judicial officers (1) for willful or persistent failure to perform their duties; (2) for other conduct unbecoming a member of the judiciary; or (3) for any permanent disability which seriously interferes with the performance of their duties.
The impeachment process has been cumbersome and costly, and this brought forth judicial discipline and removal commissions such as our Judicial Qualifications Commission. These commissions have been operating less than 15 years and were developed in order to provide an effective disciplinary and administrative authority which would improve not only the manner of disciplining judicial officers but also would aid in the administrative operation of the court system.
The Commission provides an alternative means of discipline of judicial officers for "misdemeanors in office" as prescribed in the impeachment article.[3] The authority to discipline for impeachable misconduct is, however, only the first of three primary functions of the Commission.
The second is to enforce and impose sanctions for violations of ethical canons which may not be impeachable offenses.[4] In this regard, conduct which would be allowed for an officer in the legislative or executive branches may be unethical and prohibited for a judicial officer.[5]
The third function requires the Commission to provide a means to solve administrative inefficiencies in the courts brought about by judicial officers' inabilities to carry out their duties for physical disabilities or otherwise.
In addition to recommending removal of an officer, the Commission has a responsibility to correct deficiencies and substantial infractions. The mere existence of the Commission and the threat of possible action solve many problems. The Commission further provides a forum for investigating complaints and is able to effect immediate suitable solutions. The Commission, rather than being strictly punitive, is also corrective in nature.
The petitioner's subpoena puts in issue the confidentiality of the records of the Judicial Qualifications Commission. The petitioner in his brief has recognized this problem and has responsibly proposed: *4 "... the right to be permitted access to such information under such terms and conditions as the court may deem appropriate...."
The constitutional words of Article V, Section 12, "After a recommendation of removal ... the record ... shall be made public", mandate both a publication of the proceedings upon removal of a judicial officer and inversely require confidentiality of the proceedings before removal. The requirement of confidentiality of the proceedings is in accordance with 34 states which have similar boards or commissions.[6] The need and reason for confidentiality is set forth by the American Bar Association Commission on Standards of Judicial Administration which recommends:
"... The Board should receive and investigate all complaints coming to its attention, from whatever source, in whatever form so long as intelligible. There should be no requirement that the complaint be verified and none that the complainant identify himself. Except in the most extreme situations, the requirements of verification and disclosure of identity stifle complaints and thereby frustrate the objective of securing public confidence in the courts' willingness to police themselves. The provision that investigations be confidential has proven to be abundant safeguard for the judge who has been unfairly accused."
The purpose is to process complaints concerning the judiciary from any and all sources, while requiring confidentiality as a means to protect both the complainant from possible recriminations and the judicial officer from unsubstantiated charges. Confidentiality is also necessary for the Commission to carry out its responsibility to make suitable recommendations concerning judicial personnel problems that affect court efficiency. Eliminating the confidentiality of these proceedings would also eliminate many sources of information and complaints received by the Commission not only from lay citizens and litigants but also from lawyers and judges within the system.
We realize that often secrecy is considered the opposite of credibility, but it is generally recognized that the confidentiality is necessary for this type of board or commission to operate. This confidentiality should not, however, be absolute any more than it is in criminal law when considering the protection of confidential informants. Clearly the confidentiality of Commission proceedings should not be used to frustrate or withhold information from proper impeachment proceedings when the purpose of the confidentiality doctrine can be fulfilled or is no longer necessary.
The constitutional power of impeachment is exclusively in the legislature as prescribed by Article III, Section 17, of our Constitution, as follows:
"Section 17. Impeachment. 
"(a) The governor, lieutenant governor, members of the cabinet, justices of the supreme court, judges of district courts of appeal and judges of circuit courts shall be liable to impeachment for misdemeanor in office. The house of representatives by two-thirds vote shall have the power to impeach an officer. The speaker of the house of representatives shall have power at any time to appoint a committee to investigate charges against any officer subject to impeachment." [Emphasis supplied]
*5 The determination of what is an impeachable offense is the responsibility of the legislature.[7] Article III, Section 17, grants to the Speaker the power to "appoint a committee to investigate charges against any officer". A reasonable reading of the provision clearly does not contemplate a broad brush investigation of the class of officers subject to impeachment. In the cause now before this Court, the Speaker has not appointed a committee to investigate impeachment charges against a named officer nor have any allegations concerning specific charges against a named officer been made.
The Judicial Qualifications Commission is an arm of the judicial branch, and the House Judiciary Subcommittee is an arm of the legislative branch. Each has separate constitutional responsibilities for the removal of judicial officers from office. The Judicial Qualifications Commission has additional responsibilities concerning these same judicial officers. Neither of these bodies should be subservient to the other nor an investigative agency for the other.
Each branch of government has, however, the responsibility to cooperate with the other to effectuate each of their respective constitutional functions.
In this cause our judicial power must not be used to shield and protect judges guilty of impeachable offenses nor should the legislative power of impeachment be used to conduct broad brush witch-hunts, effectively destroying an alternative means of judicial discipline.
It is the opinion of this Court that the legislative branch, through the Speaker or his designated representative and in the presence of the judicial branch, through the Chief Justice or his representative, should be afforded an opportunity to examine in camera the matters and investigative files in the possession of the Judicial Qualifications Commission that concern a named officer who, in the opinion of the Speaker, may be the subject of an impeachment investigation.
Further, if an impeachment resolution is adopted without such prior examination, the same procedure should be available to the Speaker or his designated representative relating to the judicial officer named in the impeachment resolution.
The raw files of the Judicial Qualifications Commission do not constitute evidence any more than a raw FBI or other law enforcement agency file, but they should be available as a means of developing presentable evidence in any appropriate impeachment proceeding. Petitioner has responsibly recognized that these matters must be reasonably handled so that innocent persons and officials are properly protected. It is respectfully submitted that if the procedure posed herein is fully implemented, both constitutional provisions for the removal of public officers can be properly effectuated without damaging either constitutional provision.
In view of the constitutional provisions involved, the contention of the petitioner that he has authority under Section 11.143, Florida Statutes, F.S.A., is inappropriate.
The petition for writ of mandamus is denied without prejudice to proceed further in accordance with this opinion.
It is so ordered.
ADKINS, C.J., and ROBERTS, ERVIN, BOYD and McCAIN, JJ., concur.
NOTES
[1] Fla. Const., Art. III, § 17.
[2] Fla. Const., Art. V, § 12.
[3] Fla. Const., Art. III, § 17.
[4] One writer believes some violations of the judicial canons of ethics are not impeachable offenses.

P Fenton. The Scope of the Impeachment Power, 65 Nw. U.L. Rev. 719, 747 (1970).
[5] The following are illustrations:

(a) A judge must abstain from public comment about a pending or impending proceeding in any court. Canon 3A(6).
(b) A judge must refrain from financial and business dealings with lawyers or persons likely to come before him. Canon 5C
(1).
(c) A judge may not serve as an officer, director, manager, advisor, or employee of any business. Canon 5C(2), except under certain conditions.
(d) A judge may not serve as an executor, administrator, trustee, guardian, or other fiduciary except of a member of his family and then only if it will not be in his court or a court under him. Canon 5D.
(e) A judge must regularly report his compensation. Canon 6.
None of these restrictions are applicable to legislative or executive officers.
[6] The following are states which provide confidentiality by constitution, statute, or rule: Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Missouri, Montana, Nebraska, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Wisconsin, Wyoming.

"Judicial Disability and Removal Commissions, Courts and Procedures", The American Judicature Society (1973).
[7] In re Investigation of Circuit Judge, 93 So.2d 601, 607 (Fla. 1957).