[No. 43521. En Banc. May 1, 1975.]

D. N. GELLATLY, JR., *et al, Appellants*, v. CHELAN COUNTY *et al, Respondents*.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle*, by *Robert R. Beezer*, for appellants.

*Richard Whitmore, Jr., Prosecuting Attorney*, for respondent Chelan County.

*Christopher T. Bayley, Prosecuting Attorney, Norman K. Maleng, Chief Civil Deputy*, and *Dennis E. Kenny, Deputy*, for respondent King County.

*Joseph Panattoni, Prosecuting Attorney*, for respondent Kittitas County.

*Robert E. Schillberg, Prosecuting Attorney*, and *Elmer E. Johnston, Jr., Deputy*, for respondent Snohomish County.

*John Merkel, Prosecuting Attorney*, and *W. Daniel Phillips, Deputy*, for respondent Kitsap County.

*Ronald L. Hendry, Prosecuting Attorney*, and *Michael B. Hansen, Deputy*, for respondent Pierce County.

*Julian C. Dewell* (of *Anderson, Hunter, Dewell, Baker & Collins, P.S.*), for respondent Intermediate School District 109.

*Robert R. Hamilton, F. H. Chapin, Jr.*, and *Don L. Hogaboam*, for respondent City of Tacoma.

*John P. Harris, Corporation Counsel*, and *G. Grant Wilcox* and *James B. Howe, Jr., Assistants*, for respondent City of Seattle.

HAMILTON, J.—This action is one seeking a 1-mill rebate of property taxes collected or collectible in the year 1972. It is contended that the property taxes levied in 1971 for the 1972 tax year exceeded lawful levy limits. Relief is sought by way of declaratory judgment, implied contract, unconstitutional taking, and mandamus. The trial court denied relief and dismissed the action. We affirm.

Plaintiffs are owners of real property in six Washington counties. They either paid without protest or are delinquent in payment of their 1972 property taxes. Their action was denominated a plaintiff and defendant class action under CR 23 (b) (2). Accordingly, plaintiffs undertake to represent all property taxpayers in the state of Washington similarly situated. The six counties and their appropriate

officers, as named defendants and as a class, represent the remaining counties of the state who made similar levies in 1971 for taxes collectible in 1972.

The sequence of events giving rise to plaintiffs' claims is as follows:

On February 10, 1970, the legislature enacted Laws of 1970, 1st Ex. Sess., ch. 92, § 5 (RCW 84.52.050), which provides in pertinent part:

> Except as hereinafter provided, the aggregate of all tax levies upon real and personal property by the state, municipal corporations, taxing districts and governmental agencies, now existing or hereafter created, shall not exceed *twenty-two* mills on the dollar of assessed valuation *with respect to levies made in 1970 and twenty-one mills on the dollar of assessed valuation with respect to levies made in subsequent years,* . . .

(Italics ours.)

Thereafter, on January 29, 1971, the Secretary of State certified Initiative 44 to the 42nd Legislature, sitting in regular session. Initiative 44 amends RCW 84.52.050 and provides in part:

> [T]he aggregate of all tax levies upon real and personal property by the state, municipal corporations, taxing districts and governmental agencies, now existing or hereafter created, *shall not exceed twenty mills on the dollar of assessed valuation* . . .

(Italics ours.)

During the regular session, the legislature took no action on Initiative 44 and, accordingly, the Secretary of State submitted the measure to the voters at the general election of November 7, 1972. The measure was passed at the polls and is now Laws of 1973, ch. 2, effective as of December 7, 1972.

Although the legislature, during its regular session, did not take direct legislative action with respect to Initiative 44, it did on February 26, 1971, give final approval to SJR 1, a proposed constitutional amendment for submission to the voters at the November 7, 1971, general election. The proposed amendment in part provided:

[T]he aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, *shall not in any year exceed one per centum of the true and fair value of such property* . . .

(Italics ours.) Like Initiative 44, SJR 1 was approved at the polls and became amendment 55 to our state constitution presumably effective December 7, 1972. Parenthetically, the one per centum of true and fair value limitation of amendment 55 is equal to and the equivalent of the 20 mills on the dollar limitation of Initiative 44.

In the meantime, on May 10, 1971, the 42nd Legislature, sitting in extraordinary session, passed Laws of 1971, 1st Ex. Sess., ch. 299, § 24, amending RCW 84.52.050 in part, the substance of which is:

[T]he aggregate of all tax levies upon real and personal property by the state, municipal corporations, taxing districts and governmental agencies, now existing or hereafter created, *shall not exceed twenty-two mills on the dollar of assessed valuation with respect to levies made in 1970 and 1971 and 1972* and twenty-one mills on the dollar of assessed valuation with respect to levies made in subsequent years, . . .

(Italics ours.)

It is pursuant to this latter provision that the defendant counties levied 22 mills in 1971 for taxes collectible in 1972.

On July 19, 1973, this court rendered its decision in *Department of Revenue v. Hoppe*, 82 Wn.2d 549, 512 P.2d 1094 (1973), which concerned 1972 property tax levies collectible in 1973. These levies were in the amount of 22 mills on the dollar pursuant to Laws of 1971, 1st Ex. Sess., ch. 299, § 24. In that case we expanded the meaning of the word "levy" to include the extension of the tax upon the tax rolls, and held that since such had not been accomplished before December 7, 1972 (the effective date of SJR 1 and Initiative 44), the overlap created a conflict between Laws of 1971, 1st Ex. Sess., ch. 299, § 24, and SJR 1 and Initiative 44, over which the latter measures prevailed as to 1972 levies. We further noted that insofar as Laws of 1971, 1st

Ex. Sess., ch. 299, § 24, dealt with taxes collectible in 1973, it should have been placed upon the November 7, 1972, general election ballot along with Initiative 44, pursuant to Const. art. 2, § 1(a) (amendment 7).[1] We observed, too, that the legislature's failure to place the enactment on the ballot along with Initiative 44 undoubtedly arose out of a misconstruction of the effect of the initiative upon 1973 taxes arising from 1972 levies.

Pointing to *Hoppe* and to Const. art. 2, § 1(a) (amendment 7), plaintiffs declare that insofar as Laws of 1971, 1st Ex. Sess., ch. 299, § 24, deals with annual tax limitations, it deals with the same subject matter as Initiative 44, and the failure to place it upon the 1972 general election ballot with the initiative renders it null and void. Based upon this contention, plaintiffs assert that the 21-mill limitation for years subsequent to 1970 fixed by Laws of 1970, 1st Ex. Sess., ch. 92, § 5 (RCW 84.52.050), controls; hence, they seek a 1-mill rebate.

We cannot agree with plaintiffs.

██ As we have indicated, *Hoppe* dealt exclusively

---

[1]Const. art. 2, § 1(a) provides in pertinent part: "If such petitions are filed not less than ten days before any regular session of the legislature, he shall transmit the same to the legislature as soon as it convenes and organizes. Such initiative measure shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measures shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election. When conflicting measures are submitted to the people the ballots shall be so printed that a voter can express separately by making one cross (X) for each, two preferences, first, as between either measure and neither, and secondly, as between one and the other."

with 1972 levies collectible in 1973. 1971 levies collectible in 1972 were nowise involved. Laws of 1971, 1st Ex. Sess., ch. 299, § 24, added only the phrases "and 1971 and 1972" to RCW 84.52.050, thereby extending the 22-mill levy limit to those levy years. The legislature was undoubtedly aware that, due to its inaction during the regular session, Initiative 44 would appear on the ballot at the November 7, 1972, general election along with SJR 1. Understandably, too, the legislature could not necessarily foresee that we would expand upon our definition of "levy" set forth in *Carkonen v. Williams*, 76 Wn.2d 617, 458 P.2d 280 (1969), wherein we define "levy" as the legislative act of adopting a levy ordinance. Accordingly, it is entirely conceivable, if not certain, that the legislature in enacting Laws of 1971, 1st Ex. Sess., ch. 299, § 24, believed it was enacting a strictly interim measure dealing only with the levy years of 1971 and 1972, and that the statute's effectiveness would expire prior to the applicability of either Initiative 44 or SJR 1, neither of which purported to deal retroactively with earlier levies. The legislature was thus carrying out a valid legislative purpose and was not seeking or undertaking to thwart the initiative powers of the electorate. The respective enactments insofar as the 1971 levy year can stand together.

■ We noted in *Hoppe* that Laws of 1971, 1st Ex. Sess., ch. 299, contained a broad severability clause. This clause provides:

> If any phrase, clause, subsection or section of this 1971 amendatory act shall be declared unconstitutional or invalid by any court of competent jurisdiction, it shall be conclusively presumed that the legislature would have enacted this 1971 amendatory act without the phrase, clause, subsection or section so held unconstitutional or invalid and the remainder of the act shall not be affected as a result of said part being held unconstitutional or invalid.

Laws of 1971, 1st Ex. Sess., ch. 299, § 78.

Grammatically, the word "phrase" has been defined as:

> Any group of two or more words that form a sense unit, either expressing a thought fragmentarily without a com-

plete predication . . . or with a weakened form of predication . . . or as a sentence element not containing a predication but having the force of a single part of speech . . . The words forming a phrase may bear to one another any of three different kinds of relation; namely, the modifying relation . . . , the additive or multiple relation . . . , and the "composite" relation . . .

*Webster's New International Dictionary* (1944).

The "and 1972" language in Laws of 1971, 1st Ex. Sess., ch. 299, § 24, constitutes a phrase. The net effect of *Hoppe* was to declare this phrase invalid. The severance clause thereby left standing the 1971 levy limit, with which the court in *Hoppe* was wholly unconcerned.

Plaintiffs contend, however, that *Hoppe* went further and declared the whole of Laws of 1971, 1st Ex. Sess., ch. 299, § 24, invalid on the ground that the section dealt with the subject of levy limits in competition with Initiative 44 and thus ran afoul of Const. art. 2, § 1(a). Again we cannot agree. Initiative 44 did not purport to deal with 1971 levies nor did it otherwise purport to operate retroactively. Such being the case, the initiative and Laws of 1971, 1st Ex. Sess., ch. 299, § 24, did not relate to the same subject matter, *i.e.*, 1971 tax levies, within the contemplation of Const. art. 2, § 1(a). The 1971 levy provision is, therefore, valid and not in contravention of Const. art. 2, § 1(a).

The issue of the validity of Initiative 44 injected by plaintiffs is not properly before us in this cause, and we express no view thereon. Neither do we deem it appropriate, in the light of our disposition on the merits, to reach or pass upon claimed procedural errors advanced by defendants on cross appeal.

The judgment of the trial court is affirmed.

STAFFORD, C.J., FINLEY, ROSELLINI, HUNTER, WRIGHT, UTTER, and BRACHTENBACH, JJ., and SOULE, J. Pro Tem., concur.

Petition for rehearing denied June 17, 1975.