OPINION OF THE COURT
Simons, J.
The issue presented is whether a Grand Jury, acting in furtherance of a lawful investigation involving two Judges, may subpoena confidential records of the State Commission on Judicial Conduct developed during an investigation into conduct of the Judges. Petitioner, the Administrator of the Commission, received such a subpoena from respondent, the District Attorney of New York County, and moved to quash it. Supreme Court denied the motion and the Appellate Division affirmed, without opinion. There should be a reversal. The Legislature has the power to exempt certain records from Grand Jury scrutiny notwithstanding the nonimpairment clause of the Constitution (see Matter of Beach v Shanley, 62 NY2d 241) and it has exercised that power with respect to confidential records of the State Commission on Judicial Conduct (Judiciary Law, § 44 et seq.).
This proceeding arose after a Grand Jury was convened in 1983 to investigate whether the crimes of bribery, bribe receiving and conspiracy had occurred during the course of a civil action in New York County. Upon learning that the Commission was also investigating the incident, the District Attorney requested its files. To assist the Commission, he obtained an order pursuant to CPL 190.25 (subd 4) *334 and provided the Commission with a summary of that evidence to aid in its assessment of his request. After examining the summary and reviewing its files, the Commission denied the request, advising him that it had no reasonable basis to determine that any allegation or other matter in its files warranted criminal proceedings (see Judiciary Law, § 44, subd 10). The District Attorney then issued a subpoena addressed to petitioner demanding production of all complaints,- correspondence, letters, investigative reports and transcripts, in sum, the Commission’s entire file on the matter. This proceeding followed.
It is important to note at the outset that the Grand Jury and the State Commission on Judicial Conduct are both constitutional investigative bodies (NY Const, art I, § 6; art VI, § 22). They serve quite different purposes, however. The Grand Jury is drawn from the population at large and charged with the duty of investigating and preferring charges against those suspected of criminal conduct while the Commission is composed of members appointed for fixed terms as defined in the Constitution and charged with the duty of investigating misconduct in the judicial branch of government and imposing discipline if misconduct is found. Thus, while the two bodies serve similar functions, they are separate and independent. One is responsible for investigating crime; the other for disciplining Judges. The Grand Jury may indict a Judge for. criminal conduct, but it may not directly remove him from office, no matter how serious the misconduct may be. A Commission investigation, however, may result in charges and a finding of misconduct based upon specific cause or for persistent failure to perform duties, habitual intemperance, physical disability or for conduct on or off the Bench prejudicial to the administration of justice, i.e., the appearance of impropriety (see NY Const, art VI, § 22, subd a; Judiciary Law, § 44; and see Matter of Aldrich v State Comm. on Judicial Conduct, 58 NY2d 279; Matter of Shilling, 51 NY2d 397; Matter of Spector v State Comm. on Judicial Conduct, 47 NY2d 462). The sanction, once misconduct is established, is admonishment, censure or removal from office. Commission proceedings are not intended to take the place of criminal proceedings but if the *335 Commission obtains evidence in the course of investigating a Judge which appears to warrant criminal prosecution, it may refer the evidence to the District Attorney for that purpose (Judiciary Law, § 44, subd 10).
The District Attorney asserts that whether the Commission volunteers the information or not, the Grand Jury has the power to require turnover of the Commission’s files containing evidence of the crime. He rests his claim on the constitutional provision which states that “[t]he power of grand juries to inquire into the willful misconduct in office of public officers * * * shall never be suspended or impaired by law” (NY Const, art I, § 6) and on the broad power of the Grand Jury to investigate criminal activity and to compel people to appear before it (Virag v Hynes, 54 NY2d 437; accord Branzburg v Hayes, 408 US 665, 701-702). He reminds us that “[traditionally, our courts have afforded the Grand Jury the widest possible latitude in the exercise of their powers and insisted that in the absence of a clear constitutional or legislative expression they may not be curtailed” (People v Stern, 3 NY2d 658, 661).
We have recently examined the language contained in section 6 of article I and how it relates to the power of the Grand Jury in a case involving the reporter’s privilege (see Matter of Beach v Shanley, 62 NY2d 241, supra). In that decision we noted that the Grand Jury investigation might well result in the discovery of misconduct by a public official, but we nevertheless held that the “Shield Law” (Civil Rights Law, § 79-h) was a lawful legislative restraint on the Grand Jury’s power to compel disclosure of a reporter’s sources of information obtained in the news gathering process. Moreover, we did so prior to the reporter’s appearance before the Grand Jury though it might have been possible to recognize the privilege and still permit the inquiry to proceed sufficiently to determine whether misconduct by a public official was involved in the disclosure of the contents of the Grand Jury minutes. The dissenters suggested such a procedure but we recognized that the privilege applied whether the investigation involved misconduct by a public official or by a private citizen. In doing so we interpreted the anti-impairment clause as the court did in Matter of Wood v Hughes (9 NY2d *336 144, 150), holding that it was intended to prohibit legislation “that directly restricts a grand jury’s right to inquire or that, although facially neutral, would have its primary impact by limiting investigations of public officers” (Matter of Beach v Shanley, 62 NY2d 241, 254, supra). The distinction made was between legislation that removed the Grand Jury’s áuthority to investigate public officials, which is unconstitutional, and legislation which might impede the Grand Jury in its efforts to obtain certain evidence during the cause of an investigation of a public official, which is not. Here, the legislation creating the Commission and defining its powers was not designed to thwart the powers of the Grand Jury, but instead established an independent investigatory body to maintain the integrity of the judiciary (see Matter of Nicholson u State Comm, on Judicial Conduct, 50 NY2d 597, 611). While the Commission’s power may indirectly result in a diminution of the scope of the Grand Jury’s inquiry, it does not deprive the Grand Jury of its power to investigate a Judge or any other public official and therefore does not constitute a violation of the anti-impairment clause.
Insofar as the Grand Jury’s ability to subpoena these records as an exercise of its traditional investigative powers is concerned, those powers although extensive, are not unlimited. For example, it may not violate a valid privilege, whether derived from the Constitution, statutes or the common law (Branzburg v Hayes, 408 US 665, supra; Matter of Priest v Hennessy, 51 NY2d 62 [attorney-client privilege]; Matter of Keenan v Gigante, 47 NY2d 160, cert den 444 US 887 [priest-penitent privilege]; Matter of Grand Jury Investigation, 59 NY2d 130 [physician-patient privilege]; Civil Rights Law, § 79-h [newsman’s privilege]). Additionally, its powers to compel testimony and the production of evidence must “be exercised in accordance with the procedural and evidentiary rules laid down in the Criminal Procedure Law and other statutes” (Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force, 44 NY2d 575, 582). Some of these general procedural rules place geographical and durational limits on the powers of the Grand Jury (CPL 190.05, 190.15), and others limit the *337 reception of evidence to material which is competent and relevant (CPL 190.30, subd 1; People v De Martino, 71 AD2d 477). In those cases in which the Legislature has the authority to limit the powers of the Grand Jury, it may do so explicitly or by implication (see Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force, supra). In this case, we must determine whether the general statutory provisions establishing the confidentiality of Commission records were intended to prohibit disclosure to the Grand Jury or whether a specific provision prohibiting disclosure to the Grand Jury was required to accomplish that purpose.
The relevant statutes, sections 44, 45 and 46 of the Judiciary Law, establish a legislative scheme to insure the confidentiality of Commission records. Section 45 provides broadly that “all complaints, correspondence, commission proceedings and transcripts thereof, other papers and data and records of the commission shall be confidential”. The Legislature has indicated in the statute where it intended to modify this general confidentiality requirement and grant access to Commission records. For example, the section permits the release to the public of certain information at the request of the Judge under investigation after the deletion of the names of the persons who may have been sources of information but who did not participate in the hearing. The section also expressly provides that designated staff personnel shall have access to confidential material in the performance of their powers and duties, although one could reasonably imply that they would have access to it notwithstanding the broad sweep of the confidentiality requirement it contains. The statute was amended in 1983 to permit disclosure also of some records with the consent of the applicant to the Commission on Judicial Nomination, the Governor and certain officers of the Senate considering nominees for the Court of Appeals. The amendment is notable for two reasons: first, the Legislature, in reviewing the statutory requirement of confidentiality and the few exceptions to it, apparently thought amendment was necessary even when the information was sought for consideration of a candidate’s qualifications for *338 appointment to the Court of Appeals, and second, the disclosure permitted by the amendment as adopted is less than requested, suggesting that confidentiality was given a high priority even when the information was required for such legitimate and important purposes (see Bill Jacket, L 1983, ch 35, § 1, Summary of Position of State Commission on Judicial Conduct). Neither the original nor the amended version of section 45, however, provides for release of Commission files to the Grand Jury.
The only statutory provision referrable to criminal prosecution is subdivision 10 of section 44 of the Judiciary Law. It provides that “[i]f * * * the commission determines that the complaint or any allegation thereof” warrants other or further action, the Commission may turn over the complaint or appropriate allegation thereof and any evidence relating to it to a person having administrative jurisdiction over the Judge involved, an Appellate Division or the Presiding Justice of an Appellate Division, the Chief Judge of the Court of Appeals, the Governor or a District Attorney or other prosecuting officer. Thus, although the Commission records may be disclosed in some circumstances, the section empowers the Commission to decide whether they will be and if so what part of them. Although the Legislature obviously anticipated disclosure for possible criminal prosecution by this section, it provided for disclosure to the District Attorney, not to the Grand Jury. The legislative history is not helpful in determining why this is so, but there is at least one possible reason for it; if the records are delivered to the Grand Jury, they could well become public on report or indictment and trial. If they are delivered to the District Attorney, he may be able to use them to develop evidence without further impairing their confidentiality.
Finally, section 46 of the Judiciary Law provides a procedure for punishing any staff member, employee or agent of the Commission who breaches the confidentiality of its proceedings. The sanction may be reprimand, fine, suspension or removal. By these provisions the Legislature recognized the Commission’s need for confidentiality and protected it. It was not required to specifically prohibit disclosure to the Grand Jury.
*339 It is obvious that Judges are not exempt from criminal prosecution for their conduct. The law binds all men equally, the Judges no less than the judged. The responsibilities of the Commission, however, transcend the criminal prosecution of individuals. Its concern is institutional, to protect the integrity of the judiciary and thereby preserve and enhance the public’s confidence in its courts. Experience teaches that the effective performance of that function necessarily requires the free flow of information to the Commission and the confidentiality of its proceedings until wrongdoing is established. The classic formulation of the necessity for the confidentiality of Grand Jury proceedings is found in People v Di Napoli (27 NY2d 229, 235). It applies with equal force to the Commission’s proceedings. In Di Napoli former Chief Judge Fuld noted that confidentiality was important to (1) protect members of the investigative body from outside pressures, (2) protect against subornation and perjury by witnesses, (3) protect the reputations of innocent defendants and (4) assure the confidentiality of witnesses. While the Commission may have little necessity for the benefit of a fifth consideration he listed, to prevent flight by a party expecting charges, there is in the case of the Commission the overriding constitutional concern to protect the standards of the judicial system as a whole and to insure that none but qualified Judges remain a part of it. We hold that the Legislature, by the provisions of the Judiciary Law, has provided that the traditional powers of the Grand Jury must yield to these concerns.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the motion to quash the subpoena granted.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Kaye concur with Judge Simons; Judges Jasen and Meyer on constraint of Matter of Beach v Shartley (62 NY2d 241).
Order reversed, etc.