[No. 55640–7.  En Banc.  December 30, 1988.]

ESTHER R. GARNER, *Petitioner,* v. JOHN A. CHERBERG, *as Lieutenant Governor, Respondent.*

*Edwards & Barbieri,* by *Malcolm L. Edwards* and *Catherine Wright Smith,* for petitioner.

*Reed, McClure, Moceri, Thonn & Moriarty,* by *William R. Hickman, D. Bradley Hudson,* and *Marilee C. Erickson,* for respondent.

PEARSON, C.J.—The Constitution of the State of Washington and a statute adopted by the Legislature mandate that the Commission on Judicial Conduct (Commission) establish rules for the confidentiality of its proceedings. We must decide whether a committee of one branch of the Legislature may use its subpoena power to force disclosure

of the records of those proceedings so as to cause a violation of Commission rules of confidentiality enacted pursuant to constitutional and legislative commands. We hold a legislative committee subpoena power may not be so used and, accordingly, the subpoena duces tecum is quashed.

On October 24, 1988, the Washington State Senate Committee on Rules (Committee on Rules), through Lieutenant Governor John Cherberg (respondent), issued a subpoena duces tecum directing the Executive Director of the Commission to release "all pleadings, papers, evidence records and files compiled or obtained by the Commission on Judge Gary Little"[1] to three attorneys designated by the Committee on Rules. The purpose of the subpoena was to allow the Senate Committee on Law and Justice to investigate "improvements to the process and structure of the Commission." In an attempt to resolve the dispute, the Commission presented the Committee on Rules with a 37–page report, marked "Privileged and Confidential", that had been prepared by special counsel James Danielson and George Cody, attorneys with no previous contact with the Commission, who had been retained by the Commission to review impartially all files held by the Commission pertaining to Judge Little. When no settlement was reached, Esther Garner (petitioner), Executive Director of the Commission, filed this original action, pursuant to RAP 16.2, requesting this court to quash the subpoena duces tecum.

In 1980, the people of this state adopted amendment 71 to the Constitution of the State of Washington, now embodied in article 4, section 31. It provided for the creation of the Judicial Qualifications Commission, which by later amendment became the present Commission on Judicial Conduct. From 1980 until 1986, the Constitution vested sole discretion in the Commission to establish rules of confidentiality:

---

[1]The Commission voted unanimously to close the Judge Little matter on August 25, 1986. No formal proceedings were ever initiated by the Commission against Judge Little.

The commission shall establish rules of procedure for *commission proceedings* including due process and confidentiality of proceedings.

Const. art. 4, § 31 (amend. 71).

Following the adoption of this amendment, the Legislature enacted the following implementing legislation:

All pleadings, papers, evidence records, and files of the commission, including complaints and the identity of complainants, compiled or obtained during the course of an investigation, are exempt from the public disclosure requirements of chapter 42.17 RCW. The commission shall establish rules for the confidentiality of its proceedings with due regard for the privacy interests of judges or justices who are the subject of an inquiry and the protection of persons who file complaints with the commission. Any person giving information to the commission or its employees, any member of the commission, or any person employed by the commission is subject to a proceeding for contempt in superior court for disclosing information in violation of a commission rule.

Former RCW 2.64.110; Laws of 1981, ch. 268, § 12, p. 1109.

Pursuant to both the constitutional mandate and the statutory directive of the Legislature, the Commission adopted Judicial Qualifications Commission Rules (JQCR), later denoted as Commission on Judicial Conduct Rules (CJCR). The following confidentiality rules were in effect from October 14, 1981, until September 1, 1984:

(a) Generally. Except as otherwise provided in this rule, all papers filed with the commission are confidential and all qualification proceedings before the commission, a subcommittee, or a master will be conducted in executive session.

(b) Public Inspection of Recommendation. A commission recommendation of discipline or retirement, and the findings of fact and conclusions of law supporting the recommendation, shall be available for public inspection in the commission's office during regular business hours after the recommendation is filed with the Supreme Court.

(c) Release of Information. The commission may with due consideration for the interests of the judge make a

public statement regarding a pending or completed proceeding which would otherwise be confidential in the following circumstances:

(1) If public statements that charges are pending before the commission are substantially unfair to a judge.

(2) If a judge is publicly associated with violating a rule of judicial conduct or with having a disability, and the commission, after a preliminary investigation or a formal hearing, has determined there is no basis for further proceedings or for a recommendation of discipline or retirement.

. . .

(e) Judge's Request for Release of Information. The commission may in its discretion release information concerning a pending or completed proceeding at the request of the judge who is the subject of the proceeding.

. . .

(g) Public Proceedings. If the commission determines that the public interest in maintaining confidence in the judiciary and the integrity of the administration of justice so require, it may order that some or all aspects of the proceeding before the commission may be publicly conducted or otherwise reported or disclosed to the public. The judge the subject of any hearing which may be made public will be given notice and an opportunity to be heard on the issue before the commission determines to make a hearing public.

(h) Contempt. Unless otherwise permitted by these rules, no person shall disclose information obtained by that person during commission proceedings or from papers filed with the commission. Any person giving information to the commission or any member or employee of the commission is subject to a proceeding for contempt in superior court for disclosing information in violation of this rule.

JQCR 4 (1981). On September 1, 1984, the Commission rules were revised. At that time, an additional section was added to JQCR 4(c) which allowed the Commission to make a public statement regarding a pending or completed proceeding which would otherwise have been confidential, but only:

(3) If the commission, after a preliminary investigation or a formal hearing, has determined to conclude the proceeding with informal, agreed disposition pursuant to rule 19[.]

JQCR 4 (1984).

Under both the constitution and statute, the Commission was ordered to adopt rules governing the confidentiality of all Commission proceedings. Under the terms of the applicable rules adopted by the Commission in effect from 1981 through November 1986, there is no obligation on the part of the Commission to release the files pertaining to Judge Little, and they remain confidential at the discretion of the Commission. No recommendation was ever made to this court regarding the imposition of discipline against Judge Little; and thus, there was no point in time at which the Commission was required to make any portion of the files public. In fact, were petitioner to release the files, she would technically be subject to contempt under both statute and Commission rules.

The issue then becomes, is the Committee on Rules somehow exempt from the mandate of the constitution, the rules established by the Commission, and the statutes enacted by a majority of the entire Legislature?

The subpoena duces tecum in this case was issued pursuant to RCW 44.16 and Senate Rule 43. The statute provides:

> Every chairman or presiding member of any committee of either the senate or house of representatives, or any joint committee of the senate or house of representatives, which, by the terms of its appointment, shall be authorized to send for persons and papers, shall have power, under the direction of such committee, to issue compulsory process for the attendance of any witness within the state whom the committee may wish to examine.

RCW 44.16.010. Respondent argues the fundamental principles of governmental authority vest the Legislature with the constitutional power to conduct inquiries. Nonetheless, respondent cites no authority for the argument that this

constitutionally implicit subpoena power overrides existing, valid, statutory enactments.

The United States Supreme Court considered the nature of the legislative authority to conduct investigations in *McGrain v. Daugherty*, 273 U.S. 135, 174–75, 71 L. Ed. 580, 47 S. Ct. 319, 50 A.L.R. 1 (1927), wherein the Court stated:

> [T]he power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function. . . . [I]t falls nothing short of a practical construction, long continued, of the constitutional provisions respecting their powers . . .
>
> . . . A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change . . . Thus there is ample warrant for thinking, as we do, that the constitutional provisions which commit the legislative function to the two houses are intended to include this attribute to the end that the function may be effectively exercised.

*Accord, Tenney v. Brandhove,* 341 U.S. 367, 95 L. Ed. 1019, 71 S. Ct. 783 (1951).

This court analyzed the basis for legislative investigations in *State ex rel. Hodde v. Superior Court,* 40 Wn.2d 502, 244 P.2d 668 (1952). In holding that a legislative subpoena of a city police department captain for purposes of investigating local crime conditions was valid, we stated:

> [W]e must conclude that investigations by legislative committees, as such, are not a recent innovation; that many functions and activities are proper; and that, *when acting within the scope of their authority concerning matters reasonably germane to potential legislation,* judicial supervision or review is inappropriate.

(Italics ours.) *State ex rel. Hodde,* 40 Wn.2d at 507. Accordingly, there are two limitations on the legislative power to investigate. First, the legislative action must be within the scope of the Legislature's authority. Second, the investigation must focus on issues germane to future legislation. In the case at hand, the Committee on Rules has subpoenaed confidential files protected by statutes enacted by a majority of the Legislature. *See* former RCW 2.64.110;

Laws of 1981, ch. 268, § 12. It simply cannot be said that the Committee on Rules is acting within the scope of legal authority if it seeks to violate those statutes. No one, including the Legislature, is above the law. For this court to hold otherwise would be to state that governmental action need not comply with the law. Respondent cites no authority for such a proposition.[2]

Courts elsewhere have faced similar problems. In *Stern v. Morgenthau*, 62 N.Y.2d 331, 465 N.E.2d 349, 476 N.Y.S.2d 810, (1984) the New York State Commission on Judicial Conduct petitioned to quash a subpoena issued by a New York grand jury ordering the commission to release files pertaining to judges who were the subjects of a grand jury investigation regarding allegations of bribery. In New York, both the commission and the grand jury are constitutionally created, investigative bodies. In fact, the New York State Constitution provides, "'[t]he power of grand juries to inquire into the willful misconduct in office of public officers * * * shall never be suspended or impaired by law'". *Stern v. Morgenthau*, 62 N.Y.2d at 335 (quoting N.Y. Const. art. 1, § 6). Additionally, the court noted that the commission's confidentiality provisions were established by *statute*. Nonetheless, the court quashed the subpoena, stating:

> Here, the legislation creating the Commission and defining its powers was not designed to thwart the powers of the Grand Jury, but instead established an independent investigatory body to maintain the integrity of the judiciary. While the Commission's power may indirectly result in a diminution of the scope of the Grand Jury's

---

[2]Analogously, were respondent's argument accepted, all statutorily created privileges would fall in the face of a legislative subpoena. Despite RCW 5.60.060, a physician could be compelled to testify as to confidences of his or her patient as long as the inquiry was reasonably germane to potential legislation. Likewise, in this case the Committee on Rules could have merely subpoenaed attorneys Danielson and Cody and forced them to testify as to the complete contents of the Judge Little files, despite the protection afforded a client under RCW 5.60.060. There is absolutely no indication that the Legislature intended to exempt its own actions from the scope of these statutes.

inquiry, it does not deprive the Grand Jury of its power to investigate a Judge or any other public official and therefore does not constitute a violation of the anti-impairment clause.

Insofar as the Grand Jury's ability to subpoena these records as an exercise of its traditional investigative powers is concerned, those powers although extensive, are not unlimited. *For example, it may not violate a valid privilege, whether derived from the Constitution, statutes or the common law.*

(Citations omitted. Italics ours.) *Stern v. Morgenthau,* 62 N.Y.2d at 336.

Despite the existence of statutes protecting the confidentiality of Commission proceedings, respondent attempts to liken the case at hand to the situation in *United States v. Nixon,* 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974). In that case, the President of the United States attempted to quash a subpoena duces tecum issued by a United States District Court in a criminal case. The President claimed the subpoenaed information was protected by the executive privilege, while the government maintained the evidence was essential to the successful prosecution of the criminal case. The clash of these two conflicting powers, each inherently separate, forced a balancing of the underlying constitutional principles. Unlike *United States v. Nixon, supra,* the case at hand does not, at this juncture, represent a true conflict between separate branches of government.

Respondent argues, since the Committee on Rules' investigative power is constitutionally based, any contradictory power that is not constitutionally based must fall when the two clash. Such reasoning, however, is flawed. Respondent inappropriately attempts to apply a test of judicial balancing to gauge the validity of the Legislature's actions. Such an analysis fails to recognize that even the Committee on Rules' actions must conform to valid, statutory enactments. Moreover, the legislative authority to exempt the Commission's files from the public disclosure

act has not been challenged in this case, nor has the legislative authority to mandate the establishment by the Commission of rules providing for confidentiality. Respondent would like to raise this conflict to a constitutional separation of powers clash.[3] In point of fact, the only clash in this case is between the majority of the Legislature and the will of a majority of the Committee on Rules. The people of this state, through the adoption of constitutional amendment 71, and the legislators, through the enactment of statutes, have stressed the significance of confidentiality in Commission proceedings. In fact, the necessity of confidentiality is now explicitly recognized in Const. art. 4, § 31 (amend. 77), which mandates confidentiality in initial proceedings.

This court has recognized that confidentiality of Commission proceedings is essential to the preservation of fundamental judicial independence. *See In re Deming*, 108 Wn.2d 82, 736 P.2d 639 (1987). In that case, we stated that confidentiality serves numerous functions by:

> (1) encouraging participation in the disciplinary process by protecting complainants and witnesses from retribution or harassment, and reducing the possibility of subornation of perjury; (2) protecting the reputation of innocent judges wrongfully accused of misconduct; (3) maintaining confidence in the judiciary by avoiding premature disclosure of alleged misconduct; (4) encouraging retirement as an alternative to costly and lengthy formal hearings; and (5) protecting commission members from outside pressures.

*In re Deming*, 108 Wn.2d at 92 (quoting Shaman & Begue, *Silence Isn't Always Golden: Reassessing Confidentiality in the Judicial Disciplinary Process*, 58 Temp. L.Q. 755, 760 (1985)).

Were the Senate Committee permitted, under the guise of the legislative inquiry power, to ignore valid rules, laws

---

[3]This case, however, is unlike that faced by the Supreme Court of Florida in *Forbes v. Earle*, 298 So. 2d 1 (Fla. 1974), where limited inspection of the commission's investigative records was allowed when the Legislature was acting under its constitutional impeachment authority with reference to a sitting judge, and there were no statutes contradicting the legislators' actions.

and constitutional provisions respecting confidentiality, the protections afforded by confidentiality would lose all force in future cases. Unprotected from possible retaliation, witnesses or complainants might remain silent rather than inform the Commission of judicial transgression. Judges, who otherwise might be persuaded to step down in silence, would recognize that there is no reason nor protection in doing so. Finally, the threat of exposing the confidential deliberative process of the Commission would stifle future Commission activity and subject Commission members to outside political pressures during every deliberative session. Such results would cripple the ability of the Commission to fulfill its purpose, contrary to the intent of the citizens of this state when they amended the Washington State Constitution to create the Commission on Judicial Conduct.

Respondent further argues that the Commission waived any confidentiality interests it may have in the Judge Little files when the Commission released the Danielson–Cody report to the Committee on Rules. The only support cited for this proposition is the evidentiary principle that an individual holding a *privilege* may waive that privilege. The analogy between the confidentiality of the Commission's files and a waiver of privilege, however, is not persuasive.

First, the report was released to the Committee on Rules, not the public, in an attempt to reach a settlement of the dispute. Additionally, the report was marked "Privileged and Confidential", and was accompanied by a letter in which the petitioner expressly stated that no waiver was intended as a result of the settlement attempt. The release of the Danielson–Cody report, and the narrowly drawn subpoena in this case, clearly reflect a good faith effort by each of the parties amicably to resolve the conflict. For these efforts, the parties are to be commended. A rule that would penalize the Commission for its settlement attempt, however, would only thwart such cooperation in future cases.

Second, unlike the situation where a privilege is waived, in this case, the constitution, statutes, and rules

have created confidentiality for the protection of more than just one individual. Judges, witnesses, complainants, and the Commission all have recognizable confidentiality interests. To state that a waiver has occurred by one is to disregard the interests of many others.[4]

Finally, such an analogy equates, and thereby reduces, the constitutionally based confidentiality interests to a statutory level. No authority has been cited confirming the Commission's power to waive, as an agency, the confidentiality provisions contained in the constitution. An argument similar to respondent's was made, and rejected, in *Owen v. Mann,* 105 Ill. 2d 525, 475 N.E.2d 886 (1985). In that case, a judge brought a defamation action against a party who had previously been involved in litigation before that judge, and had subsequently made complaints regarding the judge's trial conduct to the Illinois Judicial Inquiry Board. It was argued that the defendant waived any confidentiality protections by communicating the information contained in his complaint to persons other than members of the Board. Nevertheless, the Supreme Court of Illinois rejected this theory:

> The argument is without merit. Respondent erroneously equates common–law or statutory testimonial privileges with the constitutional mandate . . . [T]he confidentiality requirement is "impervious to legislative or judicial change, and it must be implemented except as overriding Federal due process requirements compel us to do otherwise." Thus, even if we assume, *arguendo,* that Owen published defamatory statements to persons other than

---

[4]The dissent argues that the 1986 amendment to Const. art. 4, § 31 should apply retroactively. The dissent makes this argument despite the parties' failure to raise the issue, despite this court's clear holding that a constitutional amendment is not given retroactive effect absent an express provision in the amendment (*see Gellatly v. Chelan Cy.,* 85 Wn.2d 314, 534 P.2d 1027 (1975)), and despite RCW 2.64.110 which arguably only allows a judge to waive confidentiality *of the fact* that a complaint is being investigated by the Commission. We will not attempt to construe an ambiguous constitutional provision in a case where it is both inapplicable and where the issue has not been briefed nor argued by the parties. *See* RAP 12.1; *Spokane v. Taxpayers,* 111 Wn.2d 91, 96, 758 P.2d 480 (1988); *In re Rosier,* 105 Wn.2d 606, 616, 717 P.2d 1353 (1986).

the Board, he did not waive the confidentiality requirement . . .

(Citations omitted.) *Owen v. Mann,* 105 Ill. 2d at 535 (quoting *People ex rel. Illinois Judicial Inquiry Bd. v. Hartel,* 72 Ill. 2d 225, 230, 380 N.E.2d 801 (1978)). We find the Illinois court's reasoning persuasive. Such a position is bolstered by the more recent adoption of amendment 77 to the constitution wherein the citizens of this state have, in fact, evidenced their desire to increase the confidentiality of Commission proceedings by removing the Commission's discretion and mandating the confidentiality of all initial proceedings. Certainly, under that constitutional amendment, the Commission would have no authority to waive confidentiality as to those initial proceedings.

Accordingly, the subpoena duces tecum is hereby quashed.

Nevertheless, we think there is a way consistent with the constitutional and legislative commands mentioned above to accommodate the legislative and public concerns. Exercising its constitutional and statutory discretion, the Commission has released to the Committee on Rules a detailed summary of its files on Judge Little. As stated above, we commend the Commission for attempting to reach an accommodation to resolve the conflict, and we commend the Senate Committee on Rules for limiting the scope of its subpoena to an in camera inspection of the Judge Little files by staff lawyers for the Senate. The Danielson–Cody report is a comprehensive review of the Commission's investigation files. It was prepared by two lawyers of impeccable integrity and competence, who had no prior part in the Commission work. Yet, without knowledge of the contents of the file, the objectivity of the report has been questioned by some members of the Senate.

Because the Commission has released its investigation files, it has exercised its constitutional and statutory discretion and there is no legal or constitutional reason why the accuracy and objectivity of the information is not subject to in camera verification.

Therefore, the court invites the Majority Leader of the Senate and the Speaker of the House of Representatives to join the Chief Justice of the Supreme Court to conduct such an in camera inspection of the Commission's investigation files on Judge Little to satisfy themselves of the objectivity of the report.

As recognized by counsel for the Senate in oral argument, and discussed by us previously, the Commission should not be required to disclose any portion of the record on Judge Little concerning its deliberations while performing its quasi–judicial function. Consistent with well established law, it may not be required to disclose any communications to and from its lawyers that are protected by the attorney–client privilege.

Comity of this nature is not unprecedented. *Forbes v. Earle,* 298 So. 2d 1 (Fla. 1974).

UTTER, DOLLIVER, DORE, CALLOW, and SMITH, JJ., concur.

ANDERSEN, J. (dissenting)—The State Constitution specifically authorizes a judge under investigation by the Commission on Judicial Conduct to waive the confidentiality of the Commission's initial proceedings including its investigative records. Since Judge Little expressly and in writing waived that confidentiality, I would hold that the Commission is required to honor the subpoena duly issued by the Senate Rules Committee. Accordingly, I dissent from the majority's opinion holding to the contrary.

The present action, although styled an "Original Action Against a State Officer", is in reality an action to quash a subpoena issued by the Senate Rules Committee.

On June 18, 1985, well before the subpoena issued, Judge Little wrote a letter to the Commission. In it, he stated in pertinent part that

*I would request permission of the Commission to be relieved from the confidentiality provision of the rules regarding the complaint and the Commission's actions*

*in relation to it. I also have no objection to the Commission discussing the complaint and its investigation and findings with the media.*

(Italics mine.)

Our State Constitution expressly allows such a waiver of confidentiality:

Whenever the commission receives a complaint against a judge or justice, it shall first conduct proceedings for the purpose of determining whether sufficient reason exists for conducting a hearing or hearings to deal with the accusations. These initial proceedings shall be confidential, *unless confidentiality is waived by the judge* or justice, but all subsequent hearings conducted by the commission shall be open to members of the public.

(Italics mine.) Const. art. 4, § 31 (amend. 77) (part).

What is being sought by the Senate Rules Committee's subpoena is, to use the Constitution's terminology, the Commission's records of the "initial proceedings" relating to Judge Little. This necessarily includes the Commission's investigative records. The Constitution allowed Judge Little to waive confidentiality and "go public", as it were; this he did.[5] I consider this to be determinative of the case before us.

Because the subpoena by its terms allows the Commission to "delete the identity of witnesses or victims contained in any or all documents," we are not here concerned with the right of confidentiality as it may pertain to such third persons.

The Constitution of the State of Washington is the state's supreme law.[6] Thus, the Commission's arguments for confidentiality based on state statutes and Commission rules must necessarily yield to the Constitution's clear and

---

[5]I would respectfully point out to anyone inclined to quibble over the scope of Judge Little's June 18, 1985 request to open his file, that he cleared up any question about the breadth of his intent when in his later letter dated June 24, 1988 (just 2 months before his death on August 18, 1988) he referred to his request to the Commission as being "to open the file to the public".

[6]*State ex rel. Lemon v. Langlie,* 45 Wn.2d 82, 109–10, 273 P.2d 464 (1954).

unequivocal authorization to judges to waive confidentiality, as Judge Little did.[7]

There are two reasons why I do not find persuasive any suggestion that because Judge Little's waiver of confidentiality request was written before the above quoted constitutional language was adopted by the people, that the constitutional waiver provision is inapplicable.

The first such reason is that the waiver provision in the Constitution applies retroactively. It is, of course, true that constitutional provisions customarily operate prospectively.[8] However, where constitutional provisions relate to procedural rules or remedies, they may be given retroactive effect.[9] A New Jersey court recently expressed the constitutional retroactivity rule as follows:

> A constitutional provision may be given retroactive effect if that is the intent of its framers. That intent may be found where the provision is "ameliorative or curative" and will not result in "manifest injustice" to a party adversely affected by retroactive application.

(Citation omitted.) *Wrightstown v. Medved*, 193 N.J. Super. 398, 404–05, 474 A.2d 1077 (1984). In accordance with these principles, I would hold that the constitutional waiver of confidentiality provision in the 77th Amendment

---

[7]*Lemon*, at 109.

[8]*See Gellatly v. Chelan Cy.*, 85 Wn.2d 314, 320, 534 P.2d 1027 (1975).

[9]State constitutional provisions have been held to be retroactive in the following cases: *Moye v. National Sur. Co.*, 208 Cal. 279, 281, 280 P. 982 (1929) (remedial); *Whittington v. Payne*, 151 La. 595, 598, 92 So. 128 (1922) (remedial); *State ex rel. Northwestern Mut. Life Ins. Co. v. Bland*, 354 Mo. 391, 395, 189 S.W.2d 542, 161 A.L.R. 423 (1945) (procedural); *Henderson v. Laclede Christy Clay Prods. Co.*, 206 S.W.2d 673, 675 (Mo. Ct. App. 1947) (procedural); *Wrightstown v. Medved*, 193 N.J. Super. 398, 404–05, 474 A.2d 1077 (1984) (ameliorative or curative); *Van Derzee v. Long Beach*, 265 A.D. 1059, 39 N.Y.S.2d 401, 402 (1943) (remedial); *Chicago, R.I. & P. Ry. v. Baroni*, 32 Okla. 540, 546, 122 P. 926 (1912) (procedural). *See also Dobbert v. Florida*, 432 U.S. 282, 292, 53 L. Ed. 2d 344, 97 S. Ct. 2290, *reh'g denied*, 434 U.S. 882 (1977), where the United States Supreme Court held that changes in the Florida death penalty statute, made between the time of the murder and the trial, were procedural and on the whole ameliorative and hence there was no ex post facto violation.

(approved November 4, 1986) is retroactive. It is procedural in that it expressly gives the judge under investigation the right to waive the confidentiality of the proceedings against him or her. It is also ameliorative and curative in that it provides a judge, who may be subject to unfair public attacks, with the means to illuminate false attacks in the spotlight of fact. Certainly no "manifest injustice" is apparent where our action would be to give effect to the judge's own request to open up the Commission's proceedings.

There is a second reason why the constitutional waiver provision is applicable here. This is because Judge Little's request that the Commission files be opened should be considered as a continuing request. Then, when the 77th Amendment was adopted on November 4, 1986 giving him the constitutional right to waive confidentiality, his request became mandatory on the Commission. The record before us does not suggest that Judge Little ever withdrew his request or changed his mind about going public with the Commission proceedings in his case. Indeed, as recently as June 24, 1988, in a letter which he wrote to a television station, he again referred to his request to the Commission as being one "to open the file to the public".

The majority opinion also discusses interesting questions of confidentiality concerning the Commission's quasi–judicial deliberations and communications with its lawyers. These issues not having been clearly raised, briefed or argued, however, their resolution should await another day.

For the foregoing reasons, I would dismiss the action to quash the subpoena, leaving it to the Commission to respond to the subpoena according to its terms.

BRACHTENBACH and DURHAM, JJ., concur with ANDERSEN, J.